NEW YORK. 271

People *on rel.* Thacher *a.* The New York Commercial Association.

as to that part through which I have 'drawn a pen in the accompanying copy, with $10 costs.

I do not think it necessary to consider the question as to how far the attorney and counsel ought to be made liable for the costs of this motion.

I shall not attempt to perform the duty of a disciplinarian on the suggestions of others, except in those cases of misconduct where I will be certain that I do not lend myself to gratify the personal animosities of political adversaries.

I do not wish to be understood as asserting that such is the case here, but it is not free from a doubt.

PEOPLE *on rel.* THACHER *a.* THE NEW YORK COMMERCIAL ASSOCIATION.

*Supreme Court, First District; Special Term, June,* 1864.

CORPORATIONS.—MANDAMUS.—CONSTITUTIONAL LAW.

A corporation may expel a member for a breach of the corporator's duty towards it.

Where a member of a corporation performs an act in direct contravention of the purposes for which the charter was obtained, he may be expelled.

The charter of an incorporated company stated that the company was formed, among other things, "to inculcate just and equitable principles in trade." *Held,* that they might expel a member for obtaining goods under false pretences, though the offence was not committed within the local jurisdiction of the corporation, nor against a member of the association.

Where it appeared by the return to a mandamus that a corporator had been duly cited under a by-law within the scope of the charter, before the officers of the corporation, and that the offence charged against him was substantiated by two witnesses, and that he was regularly found guilty, and had refused to interpose any defence,—*Held,* that the return was sufficient without showing that the witnesses testified under oath.

The constitutional provisions relative to the right of trial by jury, do not apply to proceedings taken by corporations for the removal of a member for offences against the corporation.

Motion to quash the return to an alternative mandamus, or

make it more definite and certain; also, for a peremptory man damus.

The Board of Managers of The New York Commercial Association having expelled Thomas Thacher from the association, he obtained an order to restore him to the association, or that the Board of Managers show cause, &c.

Upon the return it was shown that The New York Commercial Association was a corporation, organized among other things, " to inculcate just and equitable principles in trade," and was empowered to make all proper and needful by-laws, &c.; and to expel any member in such manner as may be provided by its by-laws. That among its by-laws was the following:

" Section 3. Any member of this association who shall wilfully violate the charter or by-laws hereof, or shall be guilty of fraudulent breach of contract, or other gross misconduct, may on complaint be summoned before the Board of Managers, when, if desired, he shall be heard in his defence, and if the charges against him be substantiated, the Board may by a vote of two-thirds of all the members present, expel him from the association."

That the corporation was not organized for pecuniary profit, but solely for the purposes declared in its charter; that at a regular meeting of the Board, on the 7th January, 1864, a complaint was preferred by Charles Parker, a member, against the relator, Thomas Thacher, that he had obtained certain goods by false pretences in a transaction in Brooklyn; that the charge was examined by a committee, who reported that the charge had been proved by Parker, by himself, and other evidence, in the presence of the relator, who had denied the charge, but given no explanation, stating that he had a replevin suit pending which might be affected by any statements he might make before them; and that the case was one coming within the above article; that upon this report they had given notice to Mr. Thacher to appear before the Board, and a trial being had, at a subsequent meeting of the Board, it was resolved, in consequence of the above facts, that the Board " must consider the charge proven, and hereby expel said Thacher from the Board until he show cause," &c.; that the relator had by counsel sub-

mitted reasons why he should not be expelled, and that the Board of Managers had thereupon granted the privilege to the relator of showing cause in writing, why the judgment of expulsion should be dissolved, &c.

That a paper was then submitted in writing, by the attorneys for Mr. Thacher, and were duly considered by the Managers, who adhered to their former decision, and that the relator is excluded from their rooms as he is not a member.

The return also showed that the by-law relative to the mode of trial, and the expulsion of members, had been amended on the 4th day of February, 1864, intermediate to the complaint against, and the expulsion of, Mr. Thacher.

The return was signed, " The New York Commercial Association, by

"ARCH. BAXTER, President."

*Fine & Chittenden*, for the motions.—I. The return is not made by " The Board of Managers," to whom the writ was directed. 1. " The return to a mandamus must be made, by the person, body, or tribunal to whom it was directed and delivered." This is fatal to the return. (*a*.) The statute is itself plain and conclusive on this point—requiring the return to be " made by the person, body, or tribunal to whom it is directed, &c. (2 *Rev. Stat.*, 608, § 54, *Edmond's edit.* ; *Angell & Ames on Corp.*, § 721 ; Manaton's Case, *T. Raymond*, 365 ; *Willcock on Mun. Corp.* ; *Tapping on Mandamus ;* Stevens' Case, 2 *Raymond*, 432 ; Knight *a*. Wells, 1 *Lutw.*, 519 ; Rex *a*. Lisle, *Andr.*, 173 ; Rex *a*. Clitheroe, 6 *Mod.*, 133 ; McCoy *a*. Justices of Harnett Co., 4 *Jones*, 180 ; *Crary's N. Y. Pr.*, 293, and cases cited ; 2 *Johns. Cas.*, 2 ed., 217, 69, § 57 ; *Bac. Abr.*, *Tit. Mandamus G. ;* 6 *Abbotts' Pr.*, 30 ; Rex *a*. The Borough of Abingdon, 12 *Mod.*, 308.) The Board or their successors are bound to do, what is required by the alternative writ, or show cause, &c. (People *a*. The Supervisors of Chenango Co., 4 *Seld.*, 330, and cases cited.) (*b*.) The Board are the only persons liable for doing a wrong, or an illegal act. The corporation at large cannot be bound by, and are not liable for an illegal act of the Board of Managers. (People *a*. Parker Vein Coal Co., *et al*, 10 *How. Pr.*, 543.) (*c*.) The Board of Managers are the body by whom the mandamus must be obeyed,

and who must do what the mandamus, alternative or peremptory commands, and are the only persons who could be punished for disobedience. (2 *Rev. Stat.*, 587, § 60 ; People *ex. rel.* James E. Jenkins a. The Parker Vein Coal Co. *et al*, 10 *How. Pr.*, 543 ; 2 *Johns. Cas.*, 217, 69, § 56 ; *Angell & Ames on Corp.*, § 730, and cases cited.) The court must have before them the particular parties—the parties doing the act complained of— the parties to whom the writ was directed, and against whom the writ can alone be enforced.

II. The return to the writ does not show by what authority said Board of Managers " tried" said relator and expelled him, or either, or any authority in said Board for that purpose. The power to expel, when it exists at all is always in the corporation at large, and so remains, unless—by the statute creating the corporation—that power is expressly vested in a particular or select body or number. (*Angell & Ames on Corp.*, 432, § 724; *Willcock on Mun. Corp.*, 245 ; *Kyd on Corp.;* Greene a. African Meth. Epis. Soc., 1 *Ser. & R.*, 254 ; Rex a. Mayor & Alderman of Doncaster, *Sayer*, 37,; Rex a. York, 2 *Ld. Raymond*, 1566 ; Rex a. Feversham, 8 *T. R.*, 356 ; Rex a. Richardson, 1 *Burr.*, 530 ; Symmers a. Regem, *Cowp.*, 503 ; Rex a. Lyme Regis, *Doug.*, 153.)

III. The return " does not show or state that the alleged charges made against the relator were proven on oath, or confessed." This the return must show.

IV. The return is evasive, insufficient, and does not sufficiently deny and answer the statements and facts contained in the writ, &c.

V. The return is evasive and argumentative.

VI. The return shows that the complaint was made against the relator, on the 7th day of January, 1864, and the alleged offences charged to have taken place, on the 18th day of July, 1863. The alleged amendment to the by-laws is said to have been made February 4, 1864. The return shows that the alleged hearing, and the expulsion, were under the by-laws as amended, and peculiarly under the amendment. It is fatal to the by-laws in this case that it is *ex post facto*, and contrary to the first principles of justice, and a clear violation of the Constitution of the United States.

VII. Neither the Board of Managers, nor the corporation

itself had any authority or jurisdiction to entertain or pass upon the complaint of Mr. Parker against the relator, much less to expel the relator as they did; for the exercise of such an authority was "contrary to the Constitution and laws of the State of New York, and of the United States, and to the law of the land." 1. The Constitution of the United States provides (see amendment thereto, Article V.), that "no person shall be deprived of life, liberty, or property without due process of law." The New York Commercial Association has property, rights, and privileges. To the enjoyment of all these rights, privileges, and advantages, each member, by virtue of his membership, is entitled. They are very valuable, and are indispensable to a successful carrying on of a commission business in this city. The corporator's interest in all the said property and privileges must be protected by the same safeguards, that the Constitution and laws of the land throw around all other property. "Due process of law" is equivalent to and synonymous with "the law of the land," and both are variously defined to be in effect, "the general law," which hears judicially, and through legal evidence, before it condemns. (*Sedgwick on Constitutional & Statutory Law,* 543–550, and cases there cited, especially New York cases.) 2. The Constitution (see Amendment, Article VI.) provides among other things that: "In all criminal prosecutions, the accused shall enjoy a speedy and public trial, &c., and shall be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor, and have the assistance of counsel for his defence." The complaint made before the Board of Managers by Mr. Parker against the relator was a criminal complaint. He charged the relator with "obtaining goods under false pretences," which is made a felony, a criminal offence, by our State statute. The Board had no means of affording the accused "compulsory process of obtaining witnesses." They also denied the relator "the assistance of counsel for his defence," by refusing to delay their alleged hearing for a day or two, his counsel being then actually engaged. 3. The provisions of the Constitution of the State of New York, are, on those subjects, precisely similar to those of the Constitution of the United States. (See *Article* 1, § 6, &c.) 4. It is a fundamental and universal principle of all law, both common and statutory, that

the powers of all corporations are strictly construed; they have no powers except what are expressly granted them, or what must necessarily be implied by the statute creating them. (2 *Kent's Com.*, 344–5.) "All corporate rights must be exercised strictly within the limits of the charter, and in perfect subordination to the Constitution and general law of the land, and the rights dependent thereon." (*Ib.*, 7 ed., 341; People a. Utica Ins. Co., 15 *Johns.*, 358, 383; Life & Fire Ins. Co. a. Mechanics' Fire Ins. Co., 7 *Wend.*, 31; Sharp a. Speir, 4 *Hill*, 76; Same a. Johnson, *Ib.*, 92; Bank of Augusta a. Earle, 13 *Peters*, 587; Bank of the U. S. a. Dandridge, 12 *Wheat.*, 68; McMasters a. Reed, 1 *Grant's* (*Penn.*) *Cas.*, 36; Halstead a. Mayor, &c., of N. Y., 3 *N. Y.*, 430; Boyce a. City of St. Louis, 29 *Barb.*, 650; 18 *How. Pr.*, 125.) 5. The power of any corporation to make by-laws is strictly confined by statute to the management of its property, the regulation of its corporate affairs, and may not be inconsistent with any existing laws. (1 *Rev. Stat.*, 599, § 1, subd. 6; 2 *Kent's Com.*, 7 ed., 341; *Angell & Ames on Corp.*, § 326.) By-laws prohibiting the members from pursuing their legal remedies beyond the jurisdiction of the corporation are void. (*Ib.*, 341.) A by-law cannot explain a doubtful charter, if there be any ambiguity on the face of the charter, it is the province of the court to explain it. (*Ib.*, § 343; 2 *Selw. N. P.*, 1144; Colder Navigation Co. a. Pilling, 14 *M. & W.*, 75.) By-laws must be reasonable, &c., and all by-laws which are vexatious, unequal, oppressive, &c., and the like, are absolutely void. (*Angell & Ames on Corp.*, § 347, and cases cited; Gosling a. Velery, 12 *Q. B.*, 437, 438, note; Farmers' & Mechanics' Bank a. Smith, 19 *Johns.*, 115; People *ex rel.* Gray a. Medical Society of the County of Erie, 24 *Barb.*, 571; Commonwealth a. St. Patrick's Benevo. Soc., 2 *Binn.*, 448.) If a by-law be entire, and a part is void, then the whole is void. (*Angell & Ames on Corp.*, § 358; Dodwell a. Oxford, 2 *Vent.*, 34; Guilford a. Clarke, *Ib.*, 248; Oxford a. Wildgoose, 3 *Lev.*, 293.) Unless the contrary is expressly granted, a corporation has jurisdiction over its own internal affairs only, and its by-laws are void as to all other things. (*Angell & Ames on Corp.*, § 359, and cases cited; Mechanics' Bank a. Smith, 19 *Johns.*, 115; Susquehannah Ins. Co. a. Perrine, 7 *Watts & S.*, 348; 25 *Misso.*, 593; 7 *Gray*, 457; Mechanics' Bank a. Smith,

19 *Johns.*, 115; Seneca Co. Bank *a.* Lamb, 26 *Barb.*, 595.) Any by-law going beyond, or attempting to go beyond the control and management of its own internal business is absolutely void. 6. The case now before the court is one of disfranchisement. It was resolved in Bagg's case that no freeman of any corporation could be disfranchised by the corporation, unless they had authority either by the express words of the charter or by prescription. (Bagg's Case, 11 *Coke*, 99; *Angell & Ames on Corp.*, § 409; *Ib.*, § 410; Matter of Long Island R. R. Co., 19 *Wend.*, 37; 2 *Kent's Com.*, 298, *marg.*, 9 ed., 344.) 7. There is no pretence that the relator was even convicted or indicted, or that any complaint even was ever made against him on the alleged charges for which he was expelled before, or by any court whatever, or that he was tried according to the laws of the land. 8. The question, then, simply is, "was the relator guilty of any offence against his duty to the corporation, as a member of it." It has been laid down as a rule, and has never been departed from, that "such offences consist only of things done, that work to the destruction of the body corporate, or to the destruction of the liberties and privileges thereof. (People *ex rel.* Gray *a.* Medical Soc. of Erie, 24 *Barb.*, 571, and cases cited; Commonwealth *a.* St. Patrick's Benev. Soc., 2 *Binn.*, 448.)

VIII. But even if the complaint had been of such a character that the corporation could have acquired jurisdiction, yet their proceedings were not such as to authorize the expulsion. The charges were not proven under oath, or confessed; on the contrary, the return shows that the relator denied the charges. No witnesses were sworn or affirmed, no oath in any shape was administered. The return must show that the charges were proven under oath, or confessed. (*Angell & Ames on Corp.*, § 725; *Willcock on Corp.; Kyd on Corp.*) The return must show that the charges were proved absolutely. "It would not be enough to return that the relator was present, and did not deny, that would not be sufficient." (Rex *a.* Feversham, 8 *T. R.*, 356.) The return should aver the relator's actual guilt. (Greene *a.* Meth. Epis. Ch., 1 *Serg. & R.*, 254.) This the return does not do.

*W. C. Noyes*, for the defendant.

MILLER, J.—The power of a private corporation to expel or disfranchise a member for good and sufficient cause, is necessarily incident to the constitution of all bodies of this character. (2 *Kent's Com.*, 297; Fawcett a. Charles, 13 *Wend.*, 473.)

In the case of People a. Medical Society of the County of Erie (24 *Barb.*, 571), which is one of the latest reported cases in this State, where the doctrine is discussed, MARVIN, J., states the legal cause of disfranchisement to be—

1st. Offences against the corporator's duty to the corporation as a member of it.

2d. Offences of a heinous or infamous character, affecting the corporator's duty as a subject, being indictable at common-law.

3d. Offences compounded of the two.

I think it must be assumed, and I do not understand that it is denied, that if any cause is established against the relator, it must be within the first division of offences above stated; that is, an offence against the corporator's duty to the corporation.

The question which next presents itself for consideration is, What constitutes an offence against the relator's duty as a corporator in the case at bar?

By the third section of the charter of the New York Commercial Association (*Sess. L.*, 1862, ch. 359), the purposes of the corporation are declared to be, among other things, "to inculcate just and equitable principles in trade," and to carry out its objects, the corporation is vested with power "to make all proper and needful by-laws, not contrary to the Constitution and the laws of the United States."

By section four they have power "to admit new members, and expel any member in such manner as may be provided by the by-laws." The by-laws contain rules and regulations as to the admission and expulsion of members; and by the third section of the by-laws, it is provided as follows:

"Any member of the association who shall wilfully violate the charter and by-laws, or shall be guilty of fraudulent breach of conduct, or other gross misconduct, may on complaint be summoned before the Board of Managers, when, if desired, he shall be heard in his defence; and if the charges against him

be substantiated, the Board may by a vote of two-thirds of all the members present, expel him from the association."

The object of the corporation appears to have been, in part, to establish a high moral standard in conducting business transactions, and to exercise somewhat of a control over those who belonged to it, in their trade with each other, and with strangers. It reached a little beyond the precise legal rights of its members in their business conduct, subjecting them to a supervisory care so far as fair dealing was concerned, to which they would not be ordinarily amenable in any tribunal known to the land.

It is urged that section three of the charter relates entirely to proceedings of members towards the corporation, and not to the conduct of members with each other.

As already stated, one of the objects of the association avowed was " to inculcate just and equitable principles in trade." How was this to be done but by acts and conduct on the part of the association and of its members, which would raise the standard of morality in trading? I think it did not mean that the association alone should avow such principles; but that its members should also practise them.

And when a person became a member, and subscribed to the articles of the association, he agreed as a condition of his being associated with the company, that he would by his example and his practise aid in this great object and leading purpose of the corporation.

This could most effectually be accomplished by a practise of integrity, honesty, and fairness in commercial dealings, both in reference to the acts of the association and its members; at its place of business and elsewhere; at all times and on all occasions when engaged in trade.

The present case is not like one where contemptuous and disrespectful language was used towards one of the members of the association, as in Fuller *a.* Trustees of Academic School of Plainfield (6 *Conn.*, 532). Nor is it similar to that of The Commonwealth *a.* St. Patrick's Benevolent Society (2 *Binn.*, 441), where a member was convicted of vilifying another member in violation of a by-law. Nor does it bear any analogy to the case of Evans *a.* Philadelphia Club (*N. Y. Trans., April* 20, 1864), where a member was guilty of a breach of the peace and disor-

derly conduct injurious to the interests of the club, and contrary to its by-laws. (See, also, Earle's Case, *Carthew*, 176 ; Jay's Case, 1 *Ventris*, 302 ; Comm. *a.* Guardians of the Poor, 6 *S. & R.*, 469 ; 24 *Barb.*, 571.)

The cases cited mainly involved the personal conduct and behavior of members, in reference to their associates, and rest, I think, on entirely a different principle from the present one. They presented no questions affecting the very design of the association, and one of the main purposes for which it was instituted and organized. In most of them, the act complained of, was a personal one, not affecting the society, and not within the scope of the powers conferred upon it to take cognizance of.

It does not help the matter, nor add to the force of these decisions, because in some of the cases the act done was committed in violation of a by-law. The answer to such a position is plain, positive, and unequivocal. The by-law was unauthorized, and was not sanctioned by any rule of law or principle applicable to the institution which enacted it.

The corporation had no right to make any such by-law. Far different is the case now considered. The precise purpose of the association is specially defined, and every member who joined it, and became entitled to its benefits and privileges, agreed that in his transactions of a business character, he would assist in forwarding its objects. He virtually stipulated in the spirit of the charter to aid in inculcating just and equitable principles in trade, and that he would so deport himself in his conduct in business matters, that such a purpose would be substantially promoted. He agreed to do nothing, at least, in violation of this sound principle. It was not an individual matter for a member to violate his solemn agreement. It affected the standing and character of the association to do so, and it was in contravention of its intention and its spirit. While improper personal conduct might be wrong and reprehensible, a subject of censure, and in this respect detract from the personal standing and consequence of an individual member, and thus indirectly affect the charter of the corporation, any act which infringed upon high and honorable motives by which the members of the association assumed to be governed, would be far more serious in the consequences it might produce. It

would not only inflict a stain upon the character for integrity of the guilty party; but it would place the association in the position of embracing among its members those who acted directly at variance with its avowed purposes; thus evincing that it had no such object in view as its charter declared.

It is further urged that the exercise of discipline, even if legal and proper, could have no application to a case like this, and if the right existed, it should be limited and confined to contracts made with members at the meetings of the association. The relator had obligated himself to inculcate just principles in trade. This applied, I suppose, to all his business conduct and relations.

If it was obligatory upon him, it was binding at all times. He had no right to make a distinction between dealing with members and strangers. He had no right to say: I will inculcate these doctrines while at the association, but I claim the privilege outside of it to be as dishonest as I choose; I will be straightforward and honest in my dealings with one class of persons; but with others I will violate the principles of integrity to which I have subscribed. If such a course of conduct could be tolerated and allowed, then so far as this great object is concerned, the association would be of no account, of no sort of importance. It would only be a shield to cover up dishonesty and fraud outside of its meetings, and when its members were engaged in dealing with strangers. Its professions of morality could amount to nothing, and be but an empty name without any substance. In fact, while its ostensible object would be elevated and honorable, it would be but a cloak for those who sought to avail themselves of its privileges to be guilty of evil practices and improper behavior. It is not a general exercise of disciplinary control of its members in their conduct with each other outside of the corporation; because in one single thing, one particular matter, which has been agreed upon, the association has power to act. In the Matter of Smith (10 *Wend*, 449), it was held, that a medical society had authority to expel a physician, when guilty of immoral conduct, and a trial and acquittal in a court of criminal jurisdiction, upon the same charges exhibited against him by the society was no bar to an inquiry under the statute, for the purpose of depriving him of his right to practice physic and surgery.

In the case last cited, a conviction by the Court of Common Pleas, of Oneida county, had for procuring an abortion, and for immoral conduct, was affirmed by the Supreme Court, after an acquittal upon an indictment for procuring the abortion. The question here is, was the relator guilty of an offence against his duty as a corporator? The rule is well settled that such offences consist of "things done that work the destruction of the body corporate, or the destruction of the liberty and privileges thereof." (*Angell & Ames on Corp.*, §§ 349, 350 ; 2 *Kent*, 297, 299.) Can it be claimed that he is not guilty, if the act done conflicts entirely with an avowed object of the association? Would not such conduct inevitably work the destruction of a body constituted for such a purpose, if upheld and sanctioned? Surely, such consequences must certainly ensue, and the offence charged was manifestly against the duty of the corporator.

It is also insisted that the by-law under which the Board of Managers acted, was illegal, unconstitutional, and void. The power to make by-laws must be exercised reasonably, with sound discretion, and strictly within the limits of the charter and in perfect subordination to the constitution and the rights dependent thereupon. (2 *Kent's Com.*, 296 ; *Angell & Ames Corp.*, § 347, and cases cited.)

Can it be said that the by-law in question violated the principle here laid down? It provided for an expulsion in case of a violation of the charter and by-laws, and in a case of fraudulent breach of contract and gross misconduct. I am inclined to think that this was within the provisions of the charter, and was necessary for the good government and support of the affairs of the corporation. (2 ~~Bing., 441.~~) 2 *Binn. 441*.

It was not unreasonable to require, that a member of an association professedly established for specific purposes, should live up to the standard of morality it had laid down in reference to business matters. The by-law in question only had relation to transactions of this character, and was perfectly legitimate and proper. The cases which are referred to for the purpose of showing that the by-law was inhibited and in conflict with the rule stated, I think are not analogous, and do not establish a principle which renders the by-law in question nugatory and void. The charge made against the relator was an offence in violation of the charter, and provided for by the by-

law. The by-law itself was in conformity with the charter, and not inconsistent with the laws of the State and the Constitution.

I do not consider the amendment of the by-law as very material or important. It was sufficiently perfect as originally framed, to authorize the action of the Board of Mamagers before the amendment was made, and I think, it is not vitiated or seriously affected by the amendment.

With the views already expressed, it is not essential to discuss the question whether a mandamus can issue in a case like the one under consideration. It is proper, however, to observe that the Commercial Association, I think, is not a joint-stock association or moneyed corporation, where the stockholders cannot be disfranchised without express authority. (2 *Kent,* 298 ; *Angell & Ames on Corp.,* 480.)

Even if it was such a corporation, the power of expulsion is expressly conferred by the charter in a proper case.

If the corporation had acquired jurisdiction, and were authorized to act in the case presented, as I think is quite evident, the question arises whether the proceedings were legal, and conducted in such a manner as to justify the expulsion of the relator.

He had notice of the charge preferred against him, if notice was essential. (*Angell & Ames on Corp.,* 7 ed., § 422.)

He was duly summoned and appeared, and thus jurisdiction was acquired to expel or disfranchise him, if a proper case was made out and established. (*Ib.,* §421 ; *Willcock on Mun. Corp.,* 265; Comm. *a.* Pennsylvania Beneficent Inst., 2 *S. & R.,* 141.)

The return to the writ shows that the charges were proven, and that the complainant and two witnesses testified in support thereof. The relator refused to make any defence except a denial of the charge, on the ground, that a suit was pending which might be affected by any statements he might make in relation to the matter ; but expressed his willingness to give all the information in his power on the subject as soon as the suit was disposed of, claiming that he could then make such explanations as would fully exonerate him from the charge. He objected to the proceedings upon the ground of the transaction complained of not coming under the jurisdiction of the Board. He was contumacious, claiming that the association had no

right to adjudicate in the complaint made against him.    In this respect, I think he erred, if the offence was within the power of the association to try, as I have shown it was.    He had assented to a submission of his conduct to the Board of Managers.    He had agreed that he might be tried by this tribunal for all offences within its jurisdiction.    He had created it, and consented to this summary mode of trial.    It was, therefore, beyond his power to say, that they had no jurisdiction.    He should have fairly submitted his defence at the time.    If members of a corporation have a right to relieve themselves in this manner from charges lawfully made of a violation of its charter, there would be no redress of many conceded offences.

I think that the charge made was sufficiently proven.    If an oath was essential, the return shows that the witnesses testified in reference to the charge made in the complaint.    The return also alleges that the relator was regularly found guilty, which is equivalent to an averment of actual guilt.    The resolutions of expulsion recite that the charge was substantiated by witnesses produced, and for this reason, as well as his declining to answer that they must consider the charges proven.

Certainly, these were good grounds for arriving at such a result.    If the charge was substantiated as alleged, this of itself would be a sufficient ground to sustain the resolution.    The relator's declining to answer, and not producing any proof, was a circumstance to be considered in connection with the evidence adduced in the final disposition of the case.

By the charter of the association, the business concerns and affairs of the corporation were under the control of the Board of Managers.    They had undoubted authority to act, and represented the whole corporation in their proceedings.    It by no means altered the case, that the offence charged was committed in a county adjoining the local place of business of the association.

As they had acquired jurisdiction of the person and of the offence, and a trial was had after due notice, and proof adduced to sustain the charge made, that the relator was guilty of an offence against his duty to the corporation as a member of it, and the proceedings were regular and legal, I think the resolution of expulsion can be upheld.

The objection that the complaint made before the Board of

Managers was a criminal complaint, and that the relator was entitled to a trial by jury, as well as some other constitutional objections raised, are not well founded.

The provisions of the Constitution referred to, only apply to cases of trial of issues of fact in civil and criminal proceedings in courts of justice. They have no application to corporations who have the inherent statutory power of expulsion or disfranchisement, nor to any bodies not exercising the ordinary jurisdiction of courts; nor to collateral or incidental proceedings, which are disciplinary in their character, by associations authorized by law, as to the conduct of their members, who have voluntarily submitted themselves to their jurisdiction. (See 10 *Wend.*, 449.)

Some other objections are taken, and points made, in reference to the proceedings of the association, and the return to the writ which I have carefully examined; but I think they are not available.

The case under consideration involves an important principle, seriously affecting the power of the corporation, as well as the privileges of its members. While the individual rights of those who are members, should be carefully guarded and protected; while proceedings against them for offences, which may lead to their expulsion and disfranchisement, should be rigidly scrutinized, and the courts should see that the powers conferred are not exceeded and abused, and that all the formalities of the law are adhered to and complied with; they should at the same time sustain any legitimate and proper action which may have been taken by the association, within the scope of their charter, to maintain and uphold mercantile honor and integrity. I think that the Board of Managers of the Commercial Association in the present case have not exceeded their powers or violated any rule of law.

The motion to quash the return to the alternative mandamus, and that a peremptory mandamus issue, must therefore be denied, with costs.