(8 Misc. Rep. 552.)

PEOPLE ex rel. JOHNSON v. NEW YORK PRODUCE EXCHANGE.

(Superior Court of New York City, General Term. May 24, 1894.)

1. EXCHANGES—MEMBERS—VIOLATION OF RULES.

Where the charter of an exchange states that its purpose is "to inculcate just and equitable principles of trade," and a by-law provides for the suspension of members accused of any proceeding inconsistent with such principles, but the corporation has taken no steps to inculcate them, a complaint charging a member with a "proceeding inconsistent with just and equitable principles of trade" does not state an offense. Gildersleeve, J., dissenting.

2. SAME—VIOLATION OF BY-LAW—PUBLIC POLICY.

A by-law which authorizes the suspension of a member for nonfulfillment of a contract, before the rights of the parties have been settled by an action, is contrary to public policy, in that it hinders the accused member in the exercise of his right to defend in an action on the contract. Gildersleeve, J., dissenting.

Appeal from special term.

Application by Edwin L. Johnson for writ of mandamus to compel the New York Produce Exchange to restore him to membership. From an order refusing a peremptory writ, relator appeals. Reversed.

Argued before SEDGWICK, C. J., and DUGRO and GILDERSLEEVE, JJ.

Southard & Fairchild, for appellant.

Baldwin & Blackmar (A. E. Blackmar, of counsel), for respondent.

SEDGWICK, C. J. The relator was a member of a corporation,—the defendant. He was, in regular form, charged with a violation of one of the by-laws, and was found guilty and was suspended from membership. He applied below for a peremptory mandamus to the corporation to restore him to membership. The application was denied, and this appeal is taken from the order then made.

The complaint against the relator charged him with, or accused him of, proceedings inconsistent with just and equitable principles of trade, as follows: Nonfulfillment of contract of November 16, 1892. It thus appears that the offense alleged is the nonfulfillment of a contract, which is, in and of itself, stated by the complaint to be a proceeding inconsistent with just and equitable principles of trade. The position taken by the relator is that neither the charter nor the by-laws made the mere nonfulfillment of a contract an offense. The by-law in question was that any member who shall be accused, etc., of fraudulent breach of contract, or of any pro-

ceeding inconsistent with just and equitable principles of trade, shall, etc. It is to be observed here that the by-law intends that a member shall be condemned when his breach of his contract shall be fraudulent. There would be no purpose of specifying this, if the intention were to punish generally unjust and inequitable breaches of contract. If there were such an intention, a fraudulent breach of contract would not be specified; for, according to the meaning of "unjust and inequitable," as given by the respondent's counsel, they would include the case of fraud. I am of opinion that a breach of contract, in and of itself, is not inconsistent with just and equitable principles of trade, in a true sense. A breach of contract is a commission of some act, or the omission, specified or implied in the contract. This commission or omission is not just or unjust, inequitable or equitable, for the law does not look for those qualities in adjudicating upon a contract, but simply at the contract and its terms. If, however, the words are to be taken in a moral sense, then the offense would be doing something in connection with the breach of contract, but which could not be part of it, that was morally unjust and inequitable. In such a case the circumstances must be charged, and not merely the fact of breaking the contract. It is asked whether it is possible to assume, as matter of law, that it is not and cannot be unjust and inequitable to break a contract. It is sufficient, I think, to say that the law has had no occasion, in passing upon a case of common-law contract, to pass upon the question of whether a breach was unjust or inequitable. It would be unnecessary to do so. The subject would be irrelevant. It must be assumed, then, that the law assumes that a breach, pure and simple, of a contract of this kind, is not just and is not equitable; and if the matter turns upon a question of trade morals, or general morals, the question will be determined by facts outside of the mere breach, and they will be a necessary part of the charge. The by-law in question is founded upon, or has received its validity from, that part of the charter which concerns the same subject, and is as follows: "The purposes of said corporation shall be * * * to inculcate just and equitable principles of trade." The complaint, in substance, then, was that the nonfulfillment of the contract was opposed to, or at variance with, the inculcation mentioned in the charter. According to Webster, "to inculcate" means to impress by frequent admonitions; to teach and enforce by frequent admonitions; to urge on the mind. On the face of the charter, this inculcation, whether to be made by writing or in any other manner, was the duty of the corporation, as such. It was not made the duty of the individual members. The corporation had done nothing towards the performance of this duty. The subject was very difficult to treat. The questions involved were what is a principle of trade? Does it involve matters of morals, as well as of political economy? What is just and equitable? To what extent should the golden rule be enforced, or should the maxim of business is business be enforced? Certainly, the individual judgments of the members were not to be relied upon. Each was not to determine the question alluded to. As long as the corporation had not acted,

there was nothing to bind the members, or to guide or enlighten them. I therefore think that, until the corporation had acted in the matter, anything done in trade by a member was not an opposition of the inculcation referred to in the charter. It might be believed that, when the corporation proceeded, a particular act might be of a kind that was opposed to the corporate movement; but, if the act was done before that, there was no violation of the charter. I think that as the case of People v. New York Commercial Ass'n, 18 Abb. Pr. 279, proceeded upon the proposition that it was the duty of the individual members, primarily, to inculcate just and equitable principles of trade, it should not be followed. There was no pretense, upon the face of the complaint, that the corporation had taken corporate action in respect of the subject. Therefore, no offense recognized by the charter was stated, and the committee had no jurisdiction of the offense alleged as such by the complaint. I am also of the opinion that by the charter the common-law right of the other party to the contract in question was preserved, and that involves the preservation of the common-law law right of the relator freely to defend by any defense that might be made in such a court of law; and it is not pretended that, at the time of the relator's trial before the board of managers, he did not have that right. The charter does not in any way refer to this right of defense. That cannot be opposed to the just and equitable principles of trade. But to threaten him, in advance of the action, with expulsion, and oppressively suspending him, for nonfulfillment of his contract, would tend to deter, or be an effort to deter, him from the exercise of a legal right. This cannot be one of the purposes of the corporation, and a by-law made under such a charter is not sanctioned by it, and is against public policy. I therefore think that the board of managers had no power to entertain the complaint. I cannot perceive that Hurst v. Produce Exchange, 100 N. Y. 605, 3 N. E. 42, touches the question. The prevailing opinion was, in substance, that a complaint of conduct against the just and equitable principles of trade gave the complaint committee power to entertain it, and a right to the board of managers to try it. It was not to be assumed that it would be adjudged that the member was guilty for doing something that was not charged in the complaint, or condemned in the by-laws. It was not decided that the nonfulfillment of a contract was intended by the by-law. That question was left for decision when it should arise, after proof was taken by the board; and it was considered that the complaint, by itself, gave jurisdiction. The complaint, on its face, did not show that the offense charged was the nonfulfillment of a contract. The order below should be reversed, with $10 costs, and the motion granted, with $10 costs.

DUGRO, J. (concurring). I think it is fair to conclude that a belief by defendant's board of managers that a breach of contract is a proceeding inconsistent with "just and equitable principles of trade," within the meaning of that term, as used in the by-laws of defendant, led to the plaintiff's expulsion. The belief did not accord with the fact. A breach of contract is not the "proceeding"

referred to in the by-law. The opinion of Judge Danforth in Hurst v. Produce Exchange (N. Y.) 3 N. E. 42, is convincing upon this point. I concur with the chief justice in his disposition of the appeal.

GILDERSLEEVE, J. (dissenting). This is an appeal from a final order of the special term denying a motion for a peremptory mandamus. The relator was a member of the New York Produce Exchange, the respondent herein, from which he has been suspended. The respondent is a corporation created by special act of the legislature. Laws 1862, c. 359. It was not organized for the sake of profit, but its leading purposes were "to provide and regulate a suitable room or rooms for a produce exchange in the city of New York, to inculcate just and equitable principles of trade, to establish and maintain uniformity in commercial usages, to acquire, preserve and disseminate valuable business information and to adjust controversies and misunderstandings between persons engaged in business." It has power to enact by-laws and to elect new members, and to expel or suspend members, in such manner as may be provided by the by-laws. The by-laws provide that if any member be accused of a willful violation of the charter, a fraudulent breach of contract, or any proceedings inconsistent with just and equitable principles of trade, or other misconduct, he may, by a complaint in writing, be summoned before the complaint committee, when, if he desire, he shall be heard in his defense. If that committee is unable to conciliate the disputants, or induce them to arbitrate, and the circumstances seem to warrant, the complaint shall be referred to the board of managers, when both plaintiff and defendant shall have an opportunity to be heard again, in person, prior to final action in the case; and if, in the opinion of the board, the charge or charges against said defendant be substantiated, it (the board of managers) may, by a vote of not less than two-thirds of all the members present, either censure, suspend, or expel him from the exchange. At the time the relator was admitted to membership in the exchange, he signed an agreement to abide by the charter and by-laws, and any amendment which might thereto be made; and at such time of admission the charter and by-laws provided as above set forth, and so provided at all the times under consideration: On or about December 22, 1892, the firm of Whitman Bros., members of the exchange, made a complaint against the relator, accusing him of "proceedings inconsistent with just and equitable principles of trade, as follows: Nonfulfilment of contract," etc. The relator appeared, and presented his defense on the merits; and the complaint committee, being unable to conciliate the disputants, or induce them to arbitrate, referred the matter to the board of managers. The relator then appeared before the board of managers, and presented his defense on the merits. After hearing the testimony the board of managers, by a vote of more than two-thirds of all the members present, suspended said relator; holding that the charge of proceedings inconsistent with just and equitable principles of trade, in respect to the nonfulfillment of the contract in question, was

substantiated. The proceedings on the part of the exchange appear to have been perfectly regular, and in accordance with the provisions of its charter and by-laws. The relator, upon being so suspended from the exchange, made a motion for a peremptory mandamus to compel the respondent to reinstate him as a member of the exchange, which motion was denied by the special term, and from the order entered thereon this appeal is taken to the general term.

It is claimed on the part of the relator that the complaint filed by Whitman Bros. did not confer jurisdiction on the exchange. By its charter and by-laws, to which relator subscribed, and by which he agreed to be bound, jurisdiction was conferred upon the exchange to suspend a member for "proceedings inconsistent with just and equitable principles of trade." The complaint is as follows:

"To the Chairman of the Complaint Committee of the New York Produce Exchange—Sir: The undersigned and above-named complainants hereby complain of the above-named defendant, member of the New York Produce Exchange, and accuse him of proceedings inconsistent with just and equitable principles of trade, as follows: Nonfulfilment of contract of November 16th, 1892. Also, claim the costs of this complaint.
                                   "Whitman Brothers, Complainants."

The relator claims that, under some circumstances, it is not "inconsistent with just and equitable principles of trade" to break a contract, and that the complaint should have been more specific; that it should have specified or indicated that the contract was claimed to have been broken through the fault or fraud of relator. We are of opinion, however, that the complaint was sufficient, as it gave relator knowledge of the alleged offense which he was to meet. See Ang. & A. Corp. § 422. The complaint stated that the relator had broken a specified contract. This fact, once established, called for an explanation from the relator. It was the province of the board to determine, from all the facts and circumstances, whether the conduct of the relator in respect of the contract was inconsistent with just and equitable principles of trade. The nature and purpose for which a corporation was created is the controlling consideration, in determining the validity of its by-laws; and if they are foreign to its character, and a departure from its purposes, they are void. If otherwise, and they are in harmony with the general laws, they are valid. That a corporation purely commercial in its character would soon cease to be respected or respectable if it tolerated among its members a violation of an undisputed contract, is a proposition too plain for argument. People v. Board of Trade, 45 Ill. 112. In the case at bar the charge against relator makes out a case of proceedings inconsistent with just and equitable principles of trade; and the relator must abide by an adjudication from the committee or board by whom, as one of the terms of membership, he agreed such matters should be investigated. Hurst v. Produce Exchange (N. Y.) 3 N. E. 42, opinion of Danforth, J. In the case last above cited, which controlled the court below, and which discloses a state of facts similar to those in the case at bar, and presents a similar question of jurisdiction, the court of appeals

was sharply divided; three members holding that the board had jurisdiction, and three holding that it had no jurisdiction, and one declining to pass upon the question of jurisdiction. See Hurst v. Produce Exchange, 100 N. Y. 605, 3 N. E. 42. We are inclined to hold that the board had jurisdiction. Corporations have an inherent power of disfranchisement for any one of three causes, viz.: (1) For offenses having no immediate relation to a member's corporate duty, but of so infamous a nature as to render him unfit for the society of honest men; (2) for an offense against the member's duty as a corporator; and (3) for offenses compounded of the two. People v. Board of Trade, supra. In this case at bar, relator is charged with an offense against his duty as a corporator, i. e. acting inconsistently with just and equitable principles of trade. He was duly given a hearing in his defense, and, after such hearing, suspended by proceedings in perfect conformity with the requirements of the charter and by-laws, which he had agreed to be bound by. It is true that there was an action pending in a court of law involving this contract between relator and Whitman Bros., but the only question which the board attempted or cared to determine was this: Was the conduct of relator inconsistent with just and equitable principles of trade? Where a member of a corporation performs an act in direct contravention of the purposes for which the charter was obtained, he may be suspended or expelled. People v. New York Commercial Ass'n, 18 Abb. Pr. 271. The charter of the defendant stated that the corporation was formed, among other things, to inculcate just and equitable principles of trade; and we are of opinion that just and equitable principles of trade require the members to perform their contracts, unless good and sufficient reasons are shown why such contracts should not or could not be performed. The exchange, having jurisdiction, acted through its board of managers judicially, in determining the question of relator's guilt and punishment; and such decision, being regularly made, cannot be collaterally reviewed. When relator joined the exchange, the by-law above referred to, with regard to proceedings inconsistent with just and equitable principles of trade, was in force; and he signed an agreement, as we have before stated, to abide by the charter and by-laws. But, independently of this agreement, the mere fact of membership subjected him to their operation, for, when a person becomes a member of a corporation, he thereby voluntarily submits himself to the operation of all laws in force for its government, and, by implication, agrees to be bound by them, so far as they are within the corporate authority to enact. People v. Board of Trade, 45 Ill. 112. The by-law provides that if, in the opinion of the board of managers, the charge be substantiated, the accused member may be censured, suspended, or expelled. The relator, by so joining the exchange, and subscribing to its charter and by-laws, chose his own tribunal, appeared before it, argued his case upon the merits, and the tribunal decided that his conduct had been unjust and inequitable, and suspended him. Where one voluntarily becomes a member of an incorporated society or association, whose by-laws provide a certain method of disfranchisement for certain

specified causes, the assent of the member thereto being a funda-
mental condition of his tenure of membership, the right of dis-
franchisement is clearly established in the corporate body, and
may be duly exercised in the manner and for the causes prescribed;
and where, under such an organization, a corporator has been regu-
larly tried and suspended or expelled, in due form, the sentence of
the body corporate, thus acting in a judicial capacity, is not to be
questioned collaterally, nor will the merits of such suspension
or expulsion be examined in proceedings for a mandamus. See
High, Mandamus, § 292. Where a subordinate body is vested with
power to determine a question of fact, the duty is judicial, and
though it can be compelled, by mandamus, to determine the fact, it
cannot be directed to decide in a particular way, however clearly
it be made to appear what the decision ought to be. People v. Com-
mon Council, 78 N. Y. 33. "Where the charter of an association
provides for an offense, directs the mode of proceeding, and au-
thorizes the society, on conviction of a member, to expel him, an
expulsion, if the proceedings have been regular, is conclusive, and
cannot be inquired into collaterally, by mandamus, or by any other
mode." Ang. & A. Corp. § 418. The fact that relator refused
to arbitrate has nothing to do with the case. The proceeding be-
fore the board was not an arbitration, or, strictly speaking, a trial
of the issues between relator and Whitman Bros. It was simply
an investigation into the conduct of the relator in the matter, to
determine whether or not he had been guilty of conduct inconsistent
with just and equitable principles of trade. For the same reason
the pendency of an action at law between relator and Whitman
Bros. has no bearing upon the case. For the reasons above stated,
the order appealed from must be affirmed, with $10 costs and dis-
bursements.