**DULWORTH et al. v. HYMAN.**

Court of Appeals of Kentucky.
Feb. 1, 1952.

Rehearing Denied March 28, 1952.

Leo J. Sandmann, Louisville, for appellants.

Lawrence S. Grauman, Louisville, for appellee.

LATIMER, Justice.

On September 23, 1947, the parties herein entered into a written lease, wherein appellee, Harry Hyman, leased to appellants, who are partners, a storeroom at 1610 Dixie Highway in Louisville. The lease was to begin December 1, 1947, and extend over a three-year period at an agreed rental of $200 per month.

The first section of paragraph 5 of the lease, which is in issue, reads: "It is mutually agreed by and between the parties hereto that in the event another business of this type is commenced within a radius of two (2) miles before the completion of this building, then, and at the option of the Lessees, this Lease may be declared null and void."

Paragraph 8, likewise in issue, reads: "Waiver of any breach of any of the provisions of this Lease shall not be construed as a waiver of any rights herein retained, nor of any subsequent breach."

Appellants rented the building for the purpose of conducting a self-service laundry. The building was not completed on the date the lease was to begin. However, appellants paid rent for the month of December, although they did not start operating until "between January 8 and 10". Sometime "around December, 1947", before the completion of the building on the leased premises and before the commencement of business operations, appellants discovered that there was a competing business in the vicinity. They, nevertheless, took possession of the storeroom and continued the operation of their business, regularly paying their rent until September, 1948, when they defaulted.

On September 8, 1948, appellee filed a petition claiming rent due, later amending to include additional rent that became due. His petition also contained a claim with reference to removal of certain platforms upon which washing machines had been bolted.

Appellants filed answer denying allegations of petition and in their second paragraph pleaded that appellee had breached the covenants of paragraphs 5 and 8 of the lease. A demurrer to this second paragraph was sustained.

Appellants then filed amended answer pleading as defense that the platforms were removed with the consent and knowledge of the lessor. In the fifth paragraph of this amended answer, they pleaded that the purpose and intention of the option was to protect the lessees "in the event another self-service laundry should become too great competition" and that lessees could not speculate as to whether or not such competing laundry within the radius "would constitute lethal competition until these defendants had operated their laundry * * * for a reasonable time." A demurrer to this paragraph was sustained.

Appellants then made a motion to transfer the case to equity for reformation of lease agreement, alleging that it was the intention of the parties that paragraph 5 above contemplated the right to cancel at any time, dependent on the "volume of business" which might or might not be reduced by a competing business, and that it was the desire and intention of the parties that this lease should "result in a profitable venture." This motion was overruled by the court.

There were two trials in the court below. On the first trial, the jury returned

a verdict of $75.00 per month in favor of appellee and allowed appellee $225 for the wrongful removal of the platforms.

Appellee filed a motion for a new trial, which was sustained, and at the second trial, in accordance with the court's peremptory instruction, the jury returned a verdict in favor of appellee for the full amount of the rent. They found for appellants, however, as to the platforms.

Appellants urge the following errors: (1) the trial court erred in sustaining the demurrers to the answers; (2) a court of equity should have had an opportunity to reform the lease because of mutual mistake; (3) the trial court erred in granting a new trial; and (4) the trial court did not permit the lease and the supplemental agreement with reference to minimizing damages to be read to the jury at either trial.

■ Obviously the trial court sustained demurrers to appellants' answers because it believed that the option to cancel the lease could only be exercised before the completion of the building. Paragraph 5 of the lease appears to be clear and unambiguous upon this. It is only when we consider paragraph 8 in connection with paragraph 5 that any difficulty arises. Careful scrutiny reveals, however, that paragraph 8 refers to the "waiver of any breach." A "breach of a contract" is the commission of an act, or the omission of some act, specified or implied in the contract. 5 Words and Phrases, page 761; People ex rel. Johnson v. New York Produce Exchange, 8 Misc. 552, 29 N.Y.S. 307, 308. The fact that a competitor appeared within the specified radius could certainly not be considered a breach of any of the provisions of the lease by appellee. It was nothing more than the happening of an event which gave appellants the right to elect either to start their business as planned or to cancel their lease as provided on the grounds that another like business had been commenced before the completion of appellee's building.

■ As to question of mutual mistake, we look at the general rule.

"The action for such relief rests on the theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake or mistake and fraud, some provision was omitted or mistakenly inserted, and the action is so to change the instrument as to conform it to the contract agreed on." 45 Am.Jur, Reformation of Instruments, Sec. 2.

"When mistake is relied on as a ground for reformation, it must be charged distinctly and with precision. The pleading must show the particular mistake, how it occurred, and that it existed at the time of the execution of the instrument in question. In other words, the pleader should show why the terms of the actual contract happened to be left out, or how terms not agreed on came to be inserted. It must be distinctly alleged that the mistake was common to both parties, or to all, if more than two, or it must be alleged that the instrument failed to express the real agreement or transaction because of mistake of one party and fraud or inequitable conduct of the other." 45 Am. Jur., Reformation of Instruments, Sec. 100, page 644.

The lease in question was drawn by appellants' lawyer. The pleadings fail to show what the particular mistake was, or how it occurred, or why the terms of the actual contract happened to be omitted. The pleading for the most part merely refers to the intention of the parties or appellants' interpretation of the "intention." It is highly improbable that the lessor would sign a lease for three years, with the right of renewal, if at any time during the term, lessees could cancel the lease because their business venture, due to competition, proved unprofitable.

■ The contention that the trial court abused its discretion in granting a new trial appears to be without merit. There will be no interference with that discretion except in cases of abuse thereof. Apparently the trial court granted a new trial in the belief that it had committed error in giving an instruction imposing a duty upon appellee to minimize his damages. Appellants state that the

transcript of evidence shows that neither party offered objections or exceptions to this instruction. However, the bill of exceptions, with reference to the first trial, states that both sides excepted. The rule is that if a discrepancy between the transcript of evidence and the bill of exceptions appears, the bill of exceptions prevails. Euster v. Vogel, 227 Ky. 735, 13 S.W.2d 1028.

 The trial court did not err in refusing to allow the lease or the supplemental agreement with reference to minimizing damages to be read to the jury. An interpretation of clauses 5 and 8 of the lease was purely a question of law. The trial court was also correct in omitting the instruction concerning the lessor's duty to. minimize damages. Ordinarily under breached contracts there is a duty to minimize damages. However, there is an exception in this type of case. We have consistently held that a landlord is not bound, upon vacation of the premises by the tenant during the term, to secure another tenant in order to minimize damages. Abrahams v. Gheens, 205 Ky. 289, 265 S.W. 778, 40 A.L.R. 186; Superior Woolen Co. Tailors, Inc., v. M. Samuels & Co., Inc., 219 Ky. 539, 293 S.W. 1078; Ideal Furniture Co. v. Mazer, 234 Ky. 665, 28 S.W.2d 974; Moore v. Rogers, 240 Ky. 743, 43 S.W.2d 31. That this view is shared by a majority of the jurisdictions, see 32 Am.Jur., Landlord and Tenant, Section 519 and Enoch C. Richards Co. v. Libby, 136 Me. 376, 10 A.2d 609, 126 A.L.R. 1219.

On December 10, 1948, while this case was pending, counsel for both appellants and appellee agreed that, without prejudice to either party, appellants could return the keys to the building and appellee could accept same and undertake to rent the premises, and if any rent were realized, same would be held by appellee awaiting the outcome of this litigation. At that time, appellee was contending that appellants had no right to cancel the lease. He now insists that he accepted the keys only after the above agreement had been executed. Under the agreement, appellants were expressly given the right to sublease the storeroom under the terms of their original lease, which they failed to do. Accepting the keys under such circumstances obviously did not constitute a surrender. When appellee finally rented the storeroom, he credited appellants with the amount received.

 The writer of this opinion thinks there is merit in the position of appellants as to mutual mistake, but the contrary view is taken by the other members of the court.

The judgment is affirmed.