CASE 5.—ACTION BY BESSIE SHEENY BY NEXT FRIEND
        AGAINST AMELIA HOLZHAUER FOR DAMAGES IN
        USING  DEFECTIVE  LEASED  PREMISES.—Octo-
        ber 31.

# Holzhauer v. Sheeny

Appeal from Campbell Circuit Court.

A. S. BERRY, Circuit Judge.

Judgment for plaintiff, defendant appeals—Reversed.

1.  Principal and Agent—Notice to Agent—Landlord and Tenant
    —Defective Premises—Injuries to Tenants.—Knowledge of an
    agent of defects in leased premises is knowledge of the
    landlord, so far as affects the latter's liability for injuries
    from such defects.
2.  Landlord and Tenant—Defective Premises—Injury to Tenant
    —Liability of Landlord.—While the rules of caveat emptor
    applies to a contract of letting, and there is no implied cove-
    nant on the part of the landlord that the premises are fit
    for the purposes for which they are rented, or that they are
    in any particular condition, yet if the landlord, with knowl-
    edge that the premises are defective or dangerous and that
    such defect is not discoverable by the tenant by the use of
    ordinary care, rents such premises, concealing such knowl-
    edge, he is liable to the tenant for injuries sustained there-
    from.
3. Same.—A landlord's failure to notify his tenant of defects in
    the premises does not render him liable for injuries there-
    from, where the landlord does not acquire such knowledge
    until after the lease is made.
4.  Evidence—Competency—Telephone Conversation.—A witness
    who is familiar with the voice of a person with whom he
    converses over the telephone may testify to admissions made
    in the conversation.
5.  Same—Identity of Person Making Admission—Evidence—Suf-
    ciency.—Evidence examined, and held sufficient to prove the

Holzhauer v. Sheeny.

identity of the person with whom witness testified he had a conversation by telephone.

6. Landlord and Tenant—Defective Premises—Injury. to Tenant—Action—Evidence.—In an action against a landlord for personal injuries resulting from defective premises, evidence of admissions by defendant's agent, tending to show knowledge by him of the defective condition prior to the time of the injury, was inadmissible, in the absence of evidence that the agent had such knowledge prior to the time of renting.

7. Evidence—Admissions by Agent—Authority of Agent.—Admissions or statements of an agent, which, had they been made by the principal, could have been proved without being subject to the rule against hearsay evidence, can not be proved against his principal, unless they form a part of the res gestae.

8. Continuance—Grounds—Absence of Witness.—Civil Code Prac., section 554, allows the deposition of witness who is a practicing physician to be read, etc. Section 556 provides that, on an affidavit of a party that the testimony of a witness is important, etc., a court may in its discretion order the personal attendance of the witness to be coerced, although such witness may otherwise be exempt from personal attendance. Held, That the absence of a physician who had been subpoenaed as a witness was not ground for a continuance, where the party who subpoenaed him did not obtain an order of court for his personal attendance.

9. Same.—Civil Code Prac., section 315, provides that an affidavit for a continuance may be read as a deposition of an absent witness who has been summoned to appear, but who fails so to do, does not apply to witnesses whose appearance can not be coerced.

SAM E. ANDERSON, attorney for appellant.

1. The primary proposition of law is that the landlord is only liable, if, at the time she rented to the appellee, she knew the timbers upholding the floor were rotten, defective and dangerous, and suppressed her knowledge of its condition.

2. The petition is fatally defective in that it fails to state that defendant knew at the time of the demise that the timbers of the floor were rotten. Knowledge acquired after the demise does not raise any duty to repair, and therefore raises no liability for damages to the lessor.

Holzhauer v. Sheeny.

### AUTHORITIES CITED.

Coke v. Gutkese, 80 Ky., 598; Franklin v. Tracy, 25 Ky. Law Rep., 1409; Doyle v. The Union Pacific R. R. Co., 147 U. S., 413; Hughes v. Cin., etc., R. R. Co., 91 Ky., 531; Louisville, etc., R. R. Co. v. Ellis' Admr., 97 Ky., 343; McLeod, Receiver, v. Ginther's Admr., 80 Ky., 399; East Tenn. Tel. Co. v. Simon's Admr., 99 Ky., 410; Roberts v. Burks, 16 Ky., 411; Reed v. Brooks, 13 Ky., 128.

A. M. CALDWELL, attorney for appellee.

We submit that upon this trial the appellee established three important facts:

1. That the closet which fell through with the appellee was rotten and utterly unsafe and unfit for use.

2. That the plaintiff, appellee, was seriously and painfully injured without the slightest fault on her part.

3. That appellant by her own confession and admission knew the condition of the closet before plaintiff was injured, and negligently failed to have it repaired or to give warning of its dangerous condition to her tenant the plaintiff, or any member of her family.

Considering the agony and distress of mind the plaintiff endured while suspended perpendicularly, head downward, into this vault, 12 feet in depth, looking death squarely in the face, until her mother, hearing her cries, came to her rescue, we insist that a verdict of $500 is not unreasonable.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—Reversing.

Appellant leased a tenement to the father of the infant appellee for the residence of his family. While using a privy closet on the premises, a defective seat, made insecure by rotting planks on which it rested, gave way with the infant appellee, precipitating her into the vault, and injuring her. In this suit by her prosecuted by her next friend, against the landlord for damages, there resulted a verdict and judgment in her favor. On the appeal, prosecuted by the land-

lord, the following errors are assigned for reversal: (1) That the petition and the evidence failed to show a cause of action, in that it did not appear, either that the landlord had agreed to keep the demised premises in repair, or that she knew of their defective condition when the contract of renting was entered into. (2) That irrelevant testimony was admitted against the defendant, first, in allowing evidence of what her agent said out of court touching his knowledge of the defect; and, second, in admitting evidence as to an alleged conversation between plaintiff's attorney and appellant over a telephone touching her own knowledge on that subject. (3) That the affidavit filed by the plaintiff for a continuance was not sufficient ground for putting defendant upon election to suffer a continuance or allow the affidavit to be read as the deposition of the absent witness.

Taking up the question in the order stated, it does not appear when the contract of renting was made, but it does appear that it was some time before the accident to appellee. The petition charges that "the sills and timbers upholding the seat in said closet were defective, rotten, and dangerous, and that this fact was well known to the defendant, and her authorized agent in charge of said premises, long enough prior to the injuries received by plaintiff, as hereinafter set out, so that defendant might have remedied the same; that neither the plaintiff nor her father knew of the dangerous and defective condition of said closet or privy, nor could they by the exercise of ordinary care have discovered same, because of the character of its construction; that defendant and her said agent negligently failed to apprise plaintiff or her father of the dangerous condition of said closet or privy, and suppressed their knowledge

thereof." The proof, to say the most of it, is no more explicit than the charge above quoted. Neither discloses when the defendant or her agent acquired their knowledge of the defects in the seat. From aught that appears, it may have been learned by them( if they knew it, in fact) after the contract of leasing was made, and after the tenant had entered upon the premises. The sufficiency of the plaintiff's case must therefore depend upon that state of .facts. It will not be disputed that the knowledge of the agent who represented the landlord in making the lease is the equivalent of such knowledge on the part of the landlord herself, as affecting her liability. It is not deemed necessary, in view of the very recent utterances of this court on the subject of the land-lord's liability respecting insecure tenements (Franklin v. Tracy, 117 Ky. 267, 25 Ky. Law Rep. 1409, 77 S. W. 1113, 78 S. W. 1112, 63 L. R. A. 649), and the well-nigh universality of the authorities elsewhere to the same effect, to more than state the prevailing principles of law on this subject.

The rule of caveat emptor applies to a contract of letting. The tenant must take the premises as he may find them. There is no implied covenant on the part of the landlord that they are fit for the purposes for which they are rented, or that they are in any particular condition; but there is this extension of the rule: If the landlord knows that the premises are defective or dangerous, and such defect is not dis-coverable by the tenant by ordinary care, and the landlord conceals or fails to disclose the dangerous condition, he is liable to the tenant, his family and servants, or even his guests, for injuries sustained therefrom. Coke v. Gutkese, 80 Ky. 598, 4 Ky. Law Rep. 545, 44 Am. Rep. 499; Franklin v. Tracy, supra,

and authorities there reviewed. The qualification of the rule of law just noted rests upon the notion of deceit practiced by the landlord; for the general rule itself is founded upon a contract relation. The parties may by contract, as by warranty, or covenant to repair or keep in repair, regulate their liability upon a different basis; but, in the absence of special agreement, the implication of the law is that the tenant agrees to take the premises as they are, and the landlord guarantees nothing except the title— that is, peaceable possession. Each is expected to look out for himself; and if the premises are fallen into disrepair, unless it be stipulated otherwise in the contract, the tenant must make the needed repairs at his own expense, or use the premises at his own risk in their dilapidated state. The rent is supposed to be regulated upon this state of the matter. As the rule of caveat emptor implies, the tenant must look for himself. If, however, there is a latent and dangerous defect, which is not discoverable by observation, or by ordinary care, but which the landlord has knowledge of, it is deemed deceit for him not to disclose the fact to the tenant before the contract of renting is entered into. It is equivalent to positive misrepresentation to the tenant to induce him to enter into the contract. Therefore such knowledge, and implied misrepresentation, having misled the tenant into making a contract without warranty of condition, he will be protected against the consequences of the fraud practiced upon him. The circuit court, however, went beyond this. It was ruled at the trial that the knowledge of the landlord of the unsafe condition of the tenement, whenever obtained, must be communicated to the tenant, or the landlord will be liable. This position is wholly out of harmony with the rule

itself and the reason upon which it rests. Nor have we been cited, or found, any adjudged case which goes so far. As, in the absence of a covenant to repair, the tenant must make repairs himself, it would afford the tenant no protection in his contract for the landlord to tell him, after the tenant's liability for the rent had attached, that there was a defect in the premises; for the tenant could not then decline to enter into the contract, as he could have done if the matter had been disclosed to him at first, nor could he regulate the rent accordingly. He might at his own expense repair the defect, it is true; but that would not better his condition under his contract. The landlord's failure to then notify the tenant of the after-acquired knowledge of pre-existing defects, as in case of his knowledge of subsequent defects, might be unneighborly, but is not illegal,

2. As the case must be returned for another trial, where the pleadings and proof might be brought into harmony with the law as stated above, it becomes necessary to notice also the other errors assigned. There was an effort to show that the landlord had knowledge of the defective seat. A witness for plaintiff testified as follows: "Q. State your name and occupation. A. A. M. Caldwell, attorney-at-law. Q. What do you know about this case? A. Shortly after the accident happened I was employed as the attorney for the plaintiff, and I went to the telephone and got Mrs. Holzhauer's number, and called it up, and I explained to her— (Objection by defendant. Objection overruled. Defendant excepts.) She seemed to understand—(Defendant objects.) I explained to her about the accident, and she said: 'I don't believe it. I had that closet fixed. You will have to see my son Louis. He has the property in charge.' And

then she hung up the receiver. (Motion to exclude overruled. Exception.)" Cross-examination: "Q. Have you ever spoken to or heard Mrs. Holzhauer talk? A. No, sir." The objection to this evidence is that the witness Caldwell did not sufficiently identify the person with whom he had his conversation, so as to admit her statements as admissions of the defendant against her interest. Obviously, the speaker whose conversation is introduced as evidence of an admission against his interest must be identified in some proper manner by evidence as the party to be charged in the suit, or the conversation is not receivable against him. If the witness was acquainted with the defendant's voice, his testimony that he recognized her voice is admissible as evidence, and it may constitute proof of her identity; or the identity might be proved otherwise. People v. McKane, 143 N. E. 455, 38 N. E. 950. In average experience the numbers and addresses contained in the telephone company's directory, for public use are found sufficiently accurate to justify its substantial trustworthiness. When, therefore, a person so stated to live at the address, and bearing the same name as the party sought to be charged, is called for by the telephone at that number and address, and answers to the name, admitting the identity, it is to be accepted as the same evidence would be if the witness testifying had called in person and the ostensible owner had answered and admitted the identity. Globe Printing Co. v. Stahl, 23 Mo. App. 451. It is remembered that in the case in hand the witness does not say that he asked the party at the other end of the line who answered his call whether it was Mrs. Amelia Holzhauer, or that she asserted that it was; but the context of the conversation detailed serves to identify

the defendant as the person who was speaking. Her calling the agent in charge her son Louis, her apparent acquaintance with the property in question, her assertion of ownership, her not questioning that plaintiff's family were her tenants in that property, her answering at the telephone number and address contained in the telephone company's directory, are all circumstances so in accord with what would have naturally resulted in such a conversation with the true owner as to be evidentiary of the identity of the person speaking as the person who actually lived at the given address, and who owned the tenement in dispute. The telephone is an instrument of such common—indeed, almost necessary—use in mercantile and social affairs of this day that to deny such evidence probative effect would be to seriously cripple the utility of this great modern instrument of communication. That which is generally accepted in the everyday affairs of life, and customarily in business transactions, as evidence, may safely be, and generally is, adopted by the courts, also, as evidence. The common sense and the common experience of mankind are safe tests of the reasonableness of rules regulating the trustworthiness of information.

On the trial appellee offered evidence of admissions by Louis Holzhauer, the agent of appellant, tending to show knowledge by him of the insecure condition of the seat prior to the time of the injury to appellee. For the reasons already indicated above, it was error to have admitted this evidence. It did not show, and there was nothing to show, whether the alleged knowledge of the agent was prior to the time of renting or acquired subsequent thereto. Its relevancy must be tested by the weaker version, where it is susceptible of two constructions. The evidence was

Holzhauer v. Sheeny.

also inadmissible upon another ground. It was hearsay. It was to this effect: Within an hour or so after the accident Louis Holzhauer came upon the scene, and then stated in the presence of two witnesses testifying that he had intended to have the defect repaired. The inference deducible from this statement is that he had had knowledge of the defect prior to the injury. It was of course, a relevant fact that the agent had knowledge of the defect, provided such knowledge existed at the time of the rental. That fact might be proved in any competent manner. But admissions or statements of an agent, which, had they been made by the principal, could have been proved without being subject to the rule against hearsay evidence, cannot be proved against his principal, unless they form part of the res gestæ. The rule is thus stated by Story on Agency, sections 134-137, and approved by Greenleaf on Evidence, section 113: "Where the acts of the agent will bind the principal, then his representations, declarations, and admissions respecting the subject-matter will also bind him, if made at the same time and constitute part of the res gestæ." At the time when the admissions of the agent are claimed to have been made in this case, the contract of renting had been long since closed. His subsequent statement about what he then knew is on no higher plane than such statement by him about what he had done. In each instance it is his recital of the circumstances of a past event. The evidence was inadmissible in the light of the authority cited.

3. The final complaint is that the court erred in requiring the defendant to admit plaintiff's affidavit for continuance as the testimony of her absent witness or suffer a postponement of the case. The absent

witness was her physician, who had been subpœnaed. The Civil Code exempts physicians from compulsory attendance as witnesses, unless expressly ordered by the court (section 556, Civ. Code Prac.), but allows their depositions to be used instead (section 554, Civ. Code). If the plaintiff desired the testimony of this witness, she ought to have taken his deposition, or had an order of court for his personal attendance, before the day of trial. It was not a good cause for delay that he was not present in person, although he had been subpœnaed (the court not having ordered his personal attendance), as the plaintiff had no right to expect his personal attendance when the law did not require it. The Code provides that the affidavit may be read as the deposition of an absent witness who has been summoned to appear, but fails (section 315, Civ. Code). That section does not apply to witnesses whose appearance cannot be coerced. Thurman v. Virgin, 18 B. Mon. 785.

For the reasons indicated, the judgment must be reversed. Cause remanded for a new trial under proceedings not inconsistent herewith.