## Andonique v. Carmen.

(Decided December 17, 1912.)

## Appeal from Jefferson Circuit Court
## (Common Pleas Branch, Second Division).

1. Landlord and Tenant—Defective Premises—Injury to Tenant— Evidence—Admissibility.—In an action for damages by the tenant against the landlord for injuries alleged to have resulted from defective premises, evidence of the statement of an employe of the landlord's agent to the effect that a former tenant said to him "I told you someone was going to get hurt" is not admissible, but where such evidence is elicited on cross-examination by the defendant, without objection and exception, and without a motion to exclude same from the consideration of the jury, its admission is not ground for reversal.

2. Landlord and Tenant—Defective Premises—Injury to Tenant— Action for Damages—Instruction.—In an action for damages against a landlord for personal injuries alleged to have been sustained by the tenant by reason of defective premises, an instruction authorizing a recovery if the landlord, at the time of renting the premises, had "such notice as would cause a reasonable person to act upon it" of the defective condition of the premises, and with such notice, concealed such defective condition from the tenant, is erroneous, it being susceptible of the construction that it was the duty of the landlord to use ordinary care to inspect the premises.

3. Landlord and Tenant—Defective Premises—Injury to Tenant— Action for Damages—Knowledge—Notice—Instruction.—While in an action for damages against the landlord for personal injuries alleged to have been received by the tenant by reason of defective premises, the landlord is not liable unless, at the time of the renting, he has knowledge of the defective condition and conceals it from the tenant, yet the knowledge of the landlord is not limited to such knowledge as he acquires by the use of his senses alone. If the landlord or his agent is notified that the premises are in a dangerous condition, and the notice thus received is sufficient, under all the circumstances, to apprise a person of ordinary prudence that the premises are in a dangerous condition, then such notice will be regarded as knowledge, and the court should so instruct the jury.

4. Landlord and Tenant—Defective Premises—Injury to Tenant— Action for Damages—Knowledge—Notice—Instruction.—Where in an action for damages by a tenant against a landlord for personal injuries alleged to have resulted from defective premises, there is evidence tending to show that the tenant knew of the

defective condition, or could have discovered same by a reasonable inspection, it is error to authorize a recovery without submitting this phase of the case to the jury.

BURWELL K. MARSHALL, JOHN L. WOODBURY for appellant.

FLEXNER & GORDON and J. L. RICHARDSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Ida Carmen, fell into a privy on premises which she rented from defendant, Annie L. Andonique, and was injured. She brought this action against defendants' Annie L. Andonique and the Fidelity Trust Company, to recover damages. The cause of action is predicated on the fact that the flooring, sills and platform of the privy gave way, by reason of their dangerous and defective condition, and precipitated her into the vault; that she did not know of such dangerous and defective condition, and could not have discovered same by the exercise of ordinary care; that such dangerous and defective condition was known to the defendant and her agent, the Fidelity Trust Company, and its servants, agents, officers and employes, prior to the time plaintiff leased the premises, and that they concealed such dangerous and defective condition from her. At the time the action was instituted, Annie L. Andonique was a nonresident, and process was served on the Fidelity Trust Company, which company it is conceded was defendant's agent for the purpose of leasing the property, collecting the rents and looking after the property. The defendant, Annie L. Andonique, without entering her appearance to the action, moved to quash the service of summons on the ground that the Fidelity Trust Company was not her agent for the service of process, but was only her agent for the purpose of renting out and taking charge of the real estate owned by her in the city of Louisville. At the same time she filed a special demurrer to the jurisdiction of the court. Both the motion to quash and the special demurrer were overruled.

The action was dismissed as to the Fidelity Trust Company.

The defendant, Annie L. Andonique, filed an answer denying the allegations of the petition, and pleading contributory negligence on the part of the plaintiff. The plea of contributory negligence was denied by reply.

Trial was had, which resulted in a verdict and judgment in favor of plaintiff in the sum of $1,999.99. Defendant appeals.

The property in question is a small cottage, and is located in the southwest corner of 20th and Chestnut streets in the city of Louisville. The defendant, Annie L. Andonique, lived in St. Louis. The Fidelity Trust Company was her agent in charge of her property, and as such agent rented the property to the plaintiff by written lease dated January 23, 1910. The privy is located at the extreme rear of the property. The accident occurred on July 19, 1910. Plaintiff testifies that she had no knowledge, either at the time the lease was executed or at the time of the accident, of the dangerous and defective condition of the privy, and that there was nothing in the appearance of the privy to indicate that it might be dangerous or defective. The wood underneath the floor was decayed, but this condition was not apparent from an inspection of the floor. This condition was concealed from her. On the day of the accident, she went into the closet, and the whole floor gave away, precipitating her into the vault. She fell a distance of 12 or 14 feet into the fecal matter. It got all over her clothing and person. She remained in the vault about 20 to 30 minutes when she was rescued by one of the men connected with the fire department. Her left arm and right side were injured, and her eyes were affected for a while. The principal injury was to her spine and head. Since the injury she has been unable to do her household work. After the accident the joist, or sleeper, was brought to her, and it was decayed. There was nothing in the looks of the flooring to indcate that there was any danger there. Daniel Leahan, a member of the fire department, testified that he rescued plaintiff from the vault in question. The vault had caved in from what he judged to be rotten joists. Dr. Robert E. Gatz testified to the extent of her injuries, and gave it as his opinion that the injury to her spine was permanent. Mrs. Maggie Carmen, a sister-in-law of plaintiff, and Mamie Mitchell, a domestic, testified to plaintiff's suffering and her inability to do her household work after the injury. Emmett B. Jeffries testified that he occupied the premises in question during the year 1908 and during the year 1909, up until a day or two before Christmas. He says that prior to the time he left the premises he complained to the employes of the

trust company that the privy was dangerous. The person he made the complaint to was Kinser, the collector. Thereafter he made a second complaint of the dangerous condition of the privy. On cross-examination, he stated that the privy needed everything new. It was all rotted down, and there was no top on it, and the sides were all off. He told the man at the trust company that the privy was liable to fall in and cause trouble. Upon being asked if anybody had gone there if the condition was such that they could have seen it, he replied: "Anybody that didn't understand it would not, I reckon." On re-direct examination, he testified that there was no evidence on the top covering of the vault to indicate that it was rotten underneath, but that the shaky condition was what alarmed him.

Plaintiff was then recalled, and testified that none of the officers or agents of the Fidelity Trust Company ever informed her of the dangerous condition of the privy. On cross-examination, she was asked how she got into communication with Mr. Jeffries. She replied that one of the young gentlemen who collected the rent for the Fidelity Trust Company came to her house just after she got hurt and said: "Mr. Jeffries told me yesterday: 'I told you some one was going to get hurt there.'" The young man who made this statement was not Mr. Kinser, but was the boy who collected for him.

For the defendant, D. F. Murphy, the manager of the real estate department of the Fidelity Trust Company, William Newhall, the assistant manager, William H. Wiser, who had charge of the repairs for that company, and N. R. Kinser, the collector, all testified either that no complaint was made to them of the dangerous condition of the vault in question, or that they had no recollection of a complaint being made. They further testified that all complaints for necessary repairs were registered by the company and immediately acted upon. Had a complaint been made, it would have been attended to promptly. J. H. Miller, a carpenter, who was sent to examine the privy just after the accident, testified that the flooring was sound, but the joists underneath the floor were decayed.

The first question to be determined is: Was the defendant properly before the court?

Subsection 6 of section 51, Civil Code, provides:

"In actions against an individual residing in another State, * * * engaged in business in this State, the

summons may be served on the manager or agent of or person in charge of said business in this State, in the county where the business is carried on or in the county where the cause of action accrues.''

In the case of Nelson, Morris & Co. v. Rehkopf & Sons, 25 Ky. L. Rep., 352, it was held that where the defendants, Nelson, Morris & Company, nonresidents, had, through an agent at Paducah, made a sale of certain goods, wares and marchandise, there being only one transaction, the service upon their agent was authorized under the provision of the Code, *supra*, and such service brought the defendants personally before the court.

In the case of Commonwealth v. Bullock, 22 Ky. L. Rep., 528, the defendants were residents of the State of Ohio, and were indicted in the Kenton Circuit Court for maintaining a nuisance by renting and leasing certain property for improper purposes. Summons was served on their agent in charge of the property. This court held that the defendants were engaged in business in this State within the contemplation of the Code provision, and that the service upon their agent in charge of the property was sufficient.

In this case the defendant lives in St. Louis. She owned the property in question and other property in the city of Louisville. The Fidelity Trust Company, as her agent, has charge of the property and rents it, and collects the rents as they accrue. The defendant being engaged in the business of renting real estate in this State, and the cause of action growing out of the dangerous and defective condition of property thus rented, we conclude that she was engaged in business in this State within the meaning of the Code provision, and that service of process on her agent, the Fidelity Trust Company, was sufficient to bring her before the court. It follows that the trial court did not err in overruling the special demurrer to the jurisdiction of the court, and the motion to quash the process.

It is next insisted that the court erred in permitting plaintiff to testify to the statement made by the collector for the trust company to the effect that ''Mr. Jeffries told me yesterday 'I told you someone was going to get hurt there.' '' This evidence was not an admission of the fact that Jeffries told the collector that someone was going to get hurt there. It was simply the statement of the collector that Jeffries said that he had told him that someone was going to get hurt there.

While this evidence was not admissible, it appears that it was brought out by defendant on cross-examination, and was not objected or excepted to; nor did defendant move to exclude the evidence from the jury. Under these circumstances, defendant cannot complain of the fact that the evidence was improperly admitted.

At the conclusion of the evidence, the defendant requested the court to give the following instruction:

"Unless the jury shall believe from the evidence that at the time the premises were rented to the plaintiff that the defendant, the landlord, had actual knowledge of the defective condition of the floor, or seat or timbers supporting them, of the privy on said premises, and having such knowledge concealed said defective condition from the tenant the plaintiff herein the law is for the defendant and the jury should so find."

This instruction was refused, and the court, in addition to an instruction on the measure of damages, gave the following instruction:

"If you believe from the evidence that at the time the premises were rented to the plaintiff that the defendant, the landlord or her agent, the Fidelity Trust Company, had actual knowledge (or such notice as would cause a reasonable person to act upon it), of the defective condition of the floor, or seat, or timber supporting them, of the privy on the premises in regard to which you have heard testimony and having such notice or knowledge concealed said defective condition from the tenant, the plaintiff herein, the law of the case is for the plaintiff and you will so find.

"But, unless you believe from the evidence that at the time the premises were rented to the plaintiff the defendant, the landlord, or her agent, the Fidelity Trust Company, had actual knowledge or such notice as would cause a reasonable person to act upon it of the defective condition of the floor, or seat, or timbers supporting them of the privy on said premises and having such notice or knowledge concealed said defective condition from the tenant, the plaintiff, herein, the law of the case is for the defendant and you should so find."

The first complaint of the instructions is the insertion of the words "or such notice as would cause a reasonable person to act upon it." In this connection it is earnestly insisted that under the rule laid down in Franklin v. Tracy, 117 Ky., 267, and the cases therein cited, the landlord is under no obligation to exercise

ordinary diligence to discover defects in the premises which he lets, and in no event can he be held liable unless he has knowledge of the defective condition, and conceals it from the tenant, and that the words complained of, fairly construed, impose upon the defendant the duty of exercising ordinary diligence to discover defects in the premises. On the other hand, counsel for plaintiff insist that notice should be regarded as knowledge, and that the words "or such notice as would cause a reasonable person to act upon it" refer to action on the part of the defendant in giving to the plaintiff the information brought home to her by such notice. In view of the fact that the words complained of are of doubtful meaning, and are fairly susceptible of the construction that it was the duty of the defendant to act upon the notice received by making an inspection of the premises, we conclude that they are misleading, and should not have been incorporated in the instruction.

We do not mean to hold, however, that the knowledge of the landlord must be limited to such knowledge as he acquires by the use of his senses alone. On the contrary, if the landlord or his agent is notified that the premises are in a dangerous condition, and the notice which he receives is sufficient under all the circumstances to apprise a person of ordinary prudence that the premises are in a dangerous condition, then such notice will be regarded as knowledge. Having this view of the law, the court, on another trial, will omit the words complained of above, as well as the word "actual," and give the following additional instruction:

"No. 2. If you believe from the evidence that defendant's agent, prior to the time of the renting, was notified that the privy was in a dangerous condition, and that such notice, if any, was sufficient, under all the circumstances, to apprise a person of ordinary prudence that the privy was in a dangerous condition, then such agent had knowledge of such dangerous condition within the meaning of instruction No. 1."

The instruction is erroneous for another reason. It will be observed that a recovery is authorized notwithstanding the fact that plaintiff may have known of the defective condition of the premises, or could have discovered such defective condition by a reasonable inspection.

In the case of Franklin v. Tracy, supra, the court quoted with approval from the following language of

Sherman & Redfield on Negligence, 5th Ed., section 709:

"Where, however, there is some latent defect, e. g., an original structural weakness or decay, or the presence of an infectious disease, or other injurious thing rendering the occupation of the premises dangerous, which were known to the lessor and were not known to the lessee or discoverable by him on a reasonable inspection, then it was the duty of the lessor to disclose the defect; and if an injury results therefrom he is liable as for negligence."

And in the more recent case of Holzhauer v. Sheeny, 127 Ky., 28, the court said:

"If the landlord knows that the premises are defective or dangerous, and such defect is not discoverable by the tenant by ordinary care, and the landlord conceals or fails to disclose the dangerous condition, he is liable to the tenant, his family and servants, and even his guests, for injuries sustained therefrom." Coke v. Gutkese, 80 Ky., 598, 4 Ky. L. Rep., 545, 44 Am. Rep., 499; Franklin v. Tracy, *supra*.

The reason for the rule is that the liability of the landlord in such cases rests entirely upon the notion of deceit; that is, knowledge on the part of the landlord of the defective condition, and fraudulent concealment from the tenant. Manifestly, if the tenant knows of the defective conditions, or could discover them by a reasonable inspection, the element of deceit is lacking, and there can be no recovery.

The witness, Jeffries testified in one place that the floor was all rotten. Subsequently, he said that the shaky condition of the privy was what alarmed him. Plaintiff occupied the premises for six months before she was injured. Manifestly, on this evidence, the question whether or not plaintiff knew of the defective condition of the privy, or could have discovered same by a reasonable inspection, was for the jury. On the return of the case, the court will qualify the instructions so as to present this phase of the case, which, under the facts, is just as essential to a recovery as knowledge on the part of the landlord of the defective condition and his concealment thereof from the plaintiff.

This conclusion makes it unnecessary for us to consider other questions that are urged as grounds for reversal.

Judgment reversed and cause remanded for new trial consistent with this opinion.