## Speckman v. Schuster.

(Decided February 18, 1919.)

## Appeal from Campbell Circuit Court.

1. Landlord and Tenant—Liability for Tenant's Injury.—The landlord is not liable for injuries growing out of the defective condition of the premises, unless such condition is known to the landlord and is not known to, or discoverable by, the tenant on a reasonable inspection, and the landlord conceals, or fails to disclose, such condition to the tenant.

2. Landlord and Tenant—Liability for Tenant's Injury.—Where the defective condition of an attic floor was known to, or discoverable by, the tenant on a reasonable inspection, the tenant could not recover for injuries caused thereby, even though she did not know of the existence of a stairway underneath the flooring, and fell further than she had reason to anticipate she would fall if the flooring gave way, since the liability of the landlord turns on the fraudulent concealment of a latent defect and not on the tenant's full appreciation of the danger.

GEORGE VEITH and NELSON & GALLAGHER for appellant.

ARTHUR C. HALL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Kate Schuster, a tenant of Charles W. Speckman, brought this suit against him to recover damages for personal injuries. From a verdict and judgment in her favor for $2,128.00, defendant appealed. Thereafter, his death was suggested, and the case was revived in the name of his administratrix.

Defendant is the owner of a two-story brick building on Monmouth street, in the city of Newport. At the time of the accident, the first floor was used as a store-room by defendant. On the second floor were two flats, one in the front of the building, and the other in the rear, each consisting of three rooms. One flat was occupied by Mr. and Mrs. Almoschlectner, while the rear flat was occupied by plaintiff Above the second floor was an attic. According to plaintiff's evidence, she rented not only the flat but also the attic for the purpose of hanging out her wash. On December 5, 1916, and after she had been a tenant for about six months, she was engaged in hanging clothes in the attic. She stepped upon the covering of an abandoned stairway, and two or three of the boards

gave way, precipitating her to the stairs below. Besides being badly bruised and wrenched, she sustained a fracture of the coccyx vertebra. After describing how she fell and the extent of her injuries, plaintiff testified as follows: "Q. Now, what was that you fell in? What kind of a place was it? A. It was an old stairway which some time, I suppose, had been covered over. Q. Where was it? A. In the attic, and I knew nothing about it because you couldn't tell on the floor it was one place like another, all different sorts of boards and loose and you couldn't tell this was covered over, this stairway. Q. Did you know anything about that stairway before you fell through? A. No, sir, I did not. Q. What part of the attic was that stairway in? A. In the front part. Q. And were there any lights there to light it up? A. Only one window and it was very dark at that place. Q. Was the light sufficient for you to see it? A. No, sir. Q. Now, how long had you been using that attic before the 5th day of December? From the time that you moved in there? A. Yes, sir. Q. In going about the attic how did you go? What care did you use? A. Just as I said; used it for laundry work and had things stored up there. Q. I will ask you if in going about the attic doing the work you did do and giving it the attention that was necessary to give it, and also necessary to give in walking about the attic and going around there, could you have seen or could you have discovered that stairway? A. No, sir, I couldn't. Q. Why couldn't you? A. Because the boards were all over and about the same looseness and two or three laying on top of each other and you couldn't tell there was any more of a stairway there than any place else. Q. About how many times had you used the attic before the time you fell through, if you know? A. I used it during the winter every week, two days, and of course in summer time I would use the yard. Q. Had you ever stepped on this stairway before? A. I don't just remember of stepping on that board; but I suppose I did. Q. You say you suppose you did? Have you any distinct recollection of whether you did or not? A. I couldn't say just if I really stepped on that board, because I hardly think I did, but I guess I have; I never went through before. Q. About how many boards gave way with you when you fell? A. I suppose about three of them, about three of them; about three fell in as I fell down in there. Q. Did you see the stairway, the hole that

you fell through afterwards? A. Afterwards, yes, sir; after I came to. Q. What was the condition of the boards then that covered it? A. They were rotten. Q. What part of them was rotten? A. Where the nails were drove in. Q. Was there anything on the sides for the boards to rest on? A. I couldn't tell you, I was hurt too bad; I couldn't say that.''

Again, on cross-examination, plaintiff testified as follows:

''Q. You say the boards in that attic floor were all loose; loose all over? A. Yes, sir. Q. They were loose all over? A. Yes, sir. Q. And when you would go over them you were aware of that fact? A. Yes, sir. Q. How large was that attic? Tell the jury. A. The attic was over three rooms; I really couldn't say how large the three rooms were; the three rooms that Mrs. Almoschlectner lived in; the attic was all over that part. Q. All over Mrs. Almoschlectner's rooms? A. Yes, sir. Q. Were those boards very loose all over that place? A. I didn't just examine that particularly, but they would sag when you would walk over them. Q. They would? A. Yes, sir.''

As to the condition of the attic floor, Mrs. Almoschlectner testified as follows: ''Q. What condition was the attic in; that is, the floor? A. Very bad condition. Q. In what way? A. The boards were loose, most all of them, and when you would walk on them they would go up and down. . . . Q. I will ask you if you ever stepped on the covering over the stairway in the attic? A. Yes, sir, often. Q. What would happen when you would step on them? A. The boards would go down, especially on one end. Of course, we would always try to avoid it. . . . Q. Could you see that (the loose condition of the boards over the stairway) if you stepped on it? A. You could not see it, but you could feel them as they went down.''

Mrs. Almoschlectner's husband described the condition of the attic floor as follows:

''That attic floor was dangerous; all over the boards would go up and down in different places.''

Mrs. Weber, another tenant, gave the following testimony: ''The attic floor was in a pretty bad condition when I went up there. . . . Q. I will ask you if you ever saw any stairway opening up there in the attic? A. I noticed that the boards were awful loose and when I

hung my clothes up there, when I stepped on them they were loose and I was afraid I would go through and I jumped off of them.''

The testimony of Harry Kirchoff was as follows: ''Q. How was the floor in the attic? A. The floor was loose boards of all different thicknesses.''

Edith Schuster, plaintiff's daughter, testified as follows: ''Q. Did you ever have occasion to observe the condition of the floor of the attic? A. Yes, sir, the floor was in very bad condition. Q. Did you know anything about a stairway that was covered up? A. No, sir, you couldn't tell it. . . . Q. Was there anything around the attic there to indicate that there was a stairway covered over, that you could see? A. Yes, sir, but I never saw it up there. I saw it from the front of the apartment where Mrs. Almoschlectner lived, but I never gave it any attention because I never visited Mrs. Almoschlectner very much.''

There was further evidence to the effect that defendant was aware of the defective condition of the floor.

The only question we deem it necessary to consider is whether the defendant's motion for a peremptory instruction should have been sustained.

It is the settled law in this state that there is no implied warranty on the part of the landlord that the premises are fit for the purposes for which they are rented, or that they are in any particular condition. On the contrary, the rule of *caveat emptor* applies. The tenant takes the premises as he finds them, and the landlord is not liable for injuries growing out of the defective condition of the premises, unless such condition is known to the landlord and is not known to, or discoverable by, the tenant on a reasonable inspection, and the landlord conceals, or fails to disclose, such condition to the tenant. The reason for the rule is that the liability of the landlord in such cases rests entirely upon the notion of deceit; that is, knowledge on the part of the landlord of the defective condition, and fraudulent concealment from the tenant. Manifestly, if the tenant knows of the defective condition, or could discover it by reasonable inspection, the element of deceit is lacking, and there can be no recovery. Thomasson, et al. v. Hiatt, 174 Ky. 293, 192 S. W. 19; Holzauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034; Andonique v. Carmen, 151 Ky. 249, 151 S. W. 921. Applying this rule to the facts of this case, we find that

plaintiff had been regularly using the attic for several months. Plaintiff says that the boards were loose all over the floor, and would sag when she would walk over them. Indeed, all the witnesses agree that the attic floor was in very bad condition; that the boards were loose, and when one would walk over them, they would go up and down. No particular inspection was necessary in order to discover this condition. Plaintiff admits that she knew of it. It was apparent not only to her but to everyone who used the attic. The only thing that plaintiff claims not to have known was the existence of the stairway. This fact is not material. It bore solely on the extent of the danger. The liability of the landlord does not turn on the tenant's full appreciation of the danger. The controlling element is the fraudulent concealment of a latent defect. Where, as here, the defect is known or is discoverable by a reasonable inspection, the element of deceit is lacking, and the landlord is not liable, even though the defective condition of the floor caused plaintiff to fall further than she had reason to anticipate she would fall if the floor gave way. The trial court should have instructed the jury to find for the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.