## Ideal Furniture Company v. Mazer et al.

(Decided June 6, 1930.)

WOOTTON & WOOTON and G. C. WILSON for appellant.

W. A. STANFILL and T. E. MOORE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

In September, 1927, the appellees leased to the appellant for a period of five years, a storeroom in a building which they were then constructing, the rent to begin when the storeroom was ready for occupancy. This condition being fulfilled in February, 1928, the appellant took possession of the storeroom and continued in the occupancy of it until the latter part of December of that year. The monthly rent reserved was $137.50 but, on taking possession of the place, the appellant contended that the floor space of the storeroom as built was not as large as the appellees had contracted by the lease to rent to the appellant, for which reason it deducted $12.50 from the first month's rent and continued to deduct this amount from the subsequent months. Although appellees insisted that they did not assent to this reduction in the rent, the jury in this case found that they did, and, as the appellees have prosecuted no cross appeal, we need not discuss this phase of the case further. The evidence satisfactorily discloses that when the appellant went into the possession of the storeroom the apartments which had been constructed above it had not then been quite completed. There were twelve of these apartments. The storeroom which was on the first floor appears to have been constructed without any ceiling and the service pipes for water, heat, and drainage to the twelve apartments ran up the side walls of this store-

room and across the joists upon which the floors of the second-floor apartments rested. The storeroom was used by the appellant as a warehouse for its stock of goods, consisting of stoves, mattresses, overstuffed furniture, beds, caskets, and the like. It seems that at the time when the appellant took possession of the storeroom, there was a leak coming from one of the service pipes overhead. Whether or not the leak from this pipe did much or little damage cannot be definitely told from this record; but, be that as it may, the record satisfactorily establishes that this leak was promptly repaired and that appellant continued to occupy the premises until they moved in the following December. However, on four and possibly five other occasions during appellant's occupancy of the storeroom, water came from overhead upon the goods and merchandise of the appellant stored in this warehouse. It is not clear how close together these occasions were. The evidence for the appellant is to the effect that the water came from leaks in the service pipes overhead, although its evidence on this point is not wholly satisfactory. The evidence of the appellees is to the effect that the cause of the water coming down as it did was the overflow, on two and possibly three occasions, from the toilets in the apartments upstairs which the tenants had permitted to become clogged, another overflow from a bath tub where the bather had forgotten to turn off the water, and still another overflow from the kitchen sink where the tenant had forgotten to shut off the faucet. The appellant made complaints about these overflows which were damaging its property and now contends that on many occasions prior to and especially in December, 1928, the appellees told it that if it did not like what was going on to move, that finally in December it accepted the appellees' invitation to move, and did move. The appellees deny making the statements attributed to them. Their version of these conversations is that they told the appellant: "If you want to move that's with you, but I will hold you to the rent." We can find no evidence in the record that appellant ever told appellees that it was going to move prior to the time it received a letter from appellees' lawyer to the effect that appellees would hold appellant to the lease even though appellant moved. This letter was mailed on December 24, 1928. After appellant moved, it sent the key back to the appellees, who promptly returned it to the appellant and the place

was vacant from the time the appellant moved up to the trial of this action, and, as we learn from briefs, still is. This declaratory judgment suit was brought by the appellees to have determined the question whether or not the lease had been terminated, or whether appellant was still obligated thereunder. The appellant presented a counterclaim for damages done its stock of goods by the water as we have herein set out. The case was tried before a jury which found that the appellant was still bound by the lease. It found nothing for the appellant on its counterclaim. From the judgment entered on that verdict, this appeal is prosecuted.

Two grounds are urged for reversal: first, that appellant was entitled to a peremptory instruction; and, secondly, errors in instructions which the court gave. .

Considering these grounds in their order, we find that, by its pleadings, appellant did not rely upon any implied covenant of quiet enjoyment, there being no such express covenant in the lease, nor upon any breach of any such covenant. Had it done so, the questions of whether there is any such implied covenant in a lease or not, and whether the water damage here justified the tenant in quitting the premises or not, would have been presented. Denny v. Marksbury, 15 Ky. Law Rep. 400; Leigh Banana Case Co. v. Rudy, 147 Ky. 772, 145 S. W. 758. Although the appellant in its answer and counterclaim as amended set out with some elaboration the water damage and its cause as claimed by it, yet these allegations were made as a justification of the complaints which appellant made to the appellees and which appellant says caused the appellees to tell it to move. Appellant justified its quitting of the premises in these words: "And (states) that it did not commit a breach of the contract of lease but simply vacated said lease upon the direction and peremptory demand of the plaintiffs. Max Mazer and Goldie Mazer."

This being the issue, the appellant was not entitled to a peremptory instruction as the evidence was in dispute on the question whether appellees had told the appellant that it was privileged to move and surrender the lease.

In support of the second ground for reversal, it is argued that the court erred in confining the right of the appellant to surrender the lease upon any offer appellees made along that line in December, 1928. Appellant contends that as its evidence indicated such offers on

the part of the appellees prior to December, the court should not have restricted its right to surrender the lease to the December offers. There was no error in this. Whatever offers had been made prior to December were never accepted by the appellant. It continued to pay its monthly rent and continued in the occupancy of the property. It paid the rent due on December 1st (the rent being payable in advance) on the seventh of that month and it is clear that by so doing it rejected any offers theretofore made it by the appellees as to a surrender of the lease. Cf. Abraham v. Gheens, 205 Ky. 289, 265 S. W. 778, 40 A. L. R. 186.

So far as appellants's contention that the court erred in not instructing the jury that even if the lease was not surrendered, it was the duty of the appellees on appellants vacating the premises to try to lease them to other parties and so minimize their damages, the contrary was expressly decided in the Abraham v. Gheens case, supra.

Appellant is correct, however, in its contention that the instruction covering its counterclaim was erroneous in that by it the jury was not permitted to find anything for the appellant on its counterclaim unless it found that the appellant was not bound on the lease. This was erroneous. According to the appellant's theory, the damage done its stock of goods was occasioned by leaks from the service pipes overhead and which were under the dominion, custody, and care of the appellees, who, as landlords, had agreed to furnish water and heat to the tenants in the apartments as well as the appellant. Appellees do not deny that these pipes were in their care and custody, and, such being the case, they were bound to use ordinary care to keep such pipes in good condition. 16 R. C. L. 1043 et seq. For their failure so to do they were liable for such damages as were occasioned by the failure, and this although the appellant had not surrendered its lease nor had a right to surrender it. A sporadic leak would not amount to a breach of any covenant to quiet enjoyment as was expressly held in the Leigh Banana Case Co. v. Rudy case, supra, but if such a leak was caused by the negligence of the landlord, he would be liable for such damages as resulted therefrom. As under the issues and instructions as framed in this case, appellant's right of surrender of the lease was not so connected with the complaint as to the water so that a decision by the jury, that appellant had no right to sur-

render the lease would be a decision that the water came from the tenants in the apartments and not from leaks in the service pipes over which the appellees had custody and control, it follows that the appellant had the right to have its counterclaim submitted independently of the issue as to its right to surrender the lease.

Therefore, in so far as the judgment holds that the lease is still in full force and effect at the modified rental of $125 a month, it is affirmed, but in so far as it dismissed the appellant's counterclaim, it is reversed, with instructions to grant the appellant a new trial only on its counterclaim, in accordance with this opinion.