## Roland v. Griffith.

June 16, 1942.

Claude E. Smith for appellant.

Cary, Miller & Kirk for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellee, Dr. Dan M. Griffith, owns a two-story brick building in Owensboro. The lower floor is used for office purposes and the upper story is used for residential purposes. The first floor of the building was erected in 1889 and the second floor a few years thereafter. When the second floor was erected the electric light meter was placed in the bathroom some five feet above the floor and to the rear of the bathtub. An open switch and the fuse block were attached to the wall near the meter and the ends of some or all of the electric wires connecting the switch and the meter were uninsulated. The meter, switch and connections remained in that condition from the time of installation until shortly after the accident in September, 1937, which is the subject of this litigation.

Mrs. W. A. Clark rented the second floor of the building from Dr. Griffith in 1935. Mrs. Clark testified that she went through and looked over the apartment with Dr. Griffith; that she did not have any contract with him as to keeping the premises in repair; and that she had made such repairs as were necessary since she had lived there.

The appellant, Mrs. Lyde Roland, moved into one of the rooms of Mrs. Clark's apartment on Labor Day, 1937. She had occupied a room in the apartment during the two preceding winters. On Tuesday following Labor Day, Mrs. Roland was severely shocked and burned while taking a bath. The peculiar circumstances under which she was injured require some explanation. There is only Mrs. Roland's testimony as to how the accident occurred. She testified that: She filled the tub with water and turned off the faucets; very hot water always came from the hot water faucet; she was standing in the tub after she had opened the drain; she procured a face towel from a high stool standing near the tub and dried her face; as she flipped the towel toward a metal towel rack below the electric meter, the towel came in contact with some part of the electrical appliances and she received an electric shock; she placed her hand on the rack to free herself but she could not do so; in an effort to free her hand from the rack she placed her other hand against the wall and received a more severe shock; she called for help and then lost consciousness; when she regained consciousness persons living in the apartment had broken down the bathroom door and found her with her back toward the water faucets with the hot water faucet on; and as a result of the scalding water her back and one arm were severely burned. The testimony of other witnesses corroborates the part of Mrs. Roland's testimony as to the burns from the hot water. Apparently, when she freed herself from the towel rack and wall, she fell against the hot water faucet, thereby causing it to open.

Mrs. Roland instituted this proceeding against Dr. Griffith and the City of Owensboro, the owner of the electric light plant. After all the evidence was in, the trial court instructed the jury to find for Dr. Griffith. There was a hung jury on the question of the liability of the City. This appeal is being prosecuted from only the part of the judgment in favor of Dr. Griffith.

The grounds urged for reversal are: (1) Dr. Griffith had knowledge of the conditions which caused the dangers when he rented the apartment to Mrs. Clark, and being a man of intelligence and wide experience he knew of the "attendant lurking dangers"; (2) the rule requiring that the landlord know at the time of the letting of all latent or hidden defects rendering the premises dan-

gerous before liability occasioned by said conditions will attach has been modified in this jurisdiction; (3) the court erred in refusing to permit the introduction of evidence which brought actual knowledge to Dr. Griffith of the dangers attending the maintenance of the electrical appliances in the bathroom; and (4) the court erred in refusing to permit the introduction of other relevant and competent evidence.

At the outset it must not be overlooked that this case concerns only the question of Dr. Griffith's liability, and not that of the City of Owensboro. Our rule is that, where the landlord leases premises with entire control to the tenant, he is not liable to the tenant for injuries suffered from latent or hidden defects of which he had no knowledge. To be held liable he must know of the defects and conceal them from the tenant. Franklin v. Tracy, 117 Ky. 267, 77 S. W. 1113, 78 S. W. 1112, 63 L. R. A. 649; Holshauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034; Andonique v. Carmen, 151 Ky. 249, 151 S. W. 921. The opinions in the cases of Richmond v. Standard Elkhorn Coal Co., 222 Ky. 150, 300 S. W. 359, 58 A. L. R. 1423, and Consolidation Coal Co. v. Zarirs, 222 Ky. 238, 300 S. W. 615, 58 A. L. R. 1430, do not modify this rule. In each of those cases the landlord retained possession of a portion of the premises for the common use of a number of tenants and it was held that he was bound to maintain in a safe condition the portion of the premises commonly used. No such situation is involved in the case before us. Furthermore, a careful analysis of the cases cited in support of the rule covering cases such as the one before us will show that they do not hold that "the landlord is not liable for the unsafe condition of premises, unless the defects were hidden and were known to exist by the landlord, or could have been so known by him by the exercise of ordinary care, and the tenant did not know of them," as indicated in the Richmond and Zarirs cases, supra.

It is insisted that an ordinance of the City of Owensboro directed that electrical appliances such as those under consideration be located and equipped differently from the manner in which the ones involved here were located and equipped; but the violation of a city ordinance is not actionable per se. Rodgers v. Stoller et al., 284 Ky. 108, 143 S. W. (2d) 1047.

Granting that the meter and other appliances were

not properly located and that they were in an unsafe condition, it does not necessarily follow that Dr. Griffith should be charged with knowledge of a latent or hidden defect in them. Mrs. Clark inspected the premises when she rented them. She could see the equipment just the same as Dr. Griffith. Mrs. Roland had lived in the apartment during the two previous winters, and, unquestionably, she was as familiar with the situation as Mrs. Clark or Dr. Griffith. All of the parties just mentioned are laymen, in so far as electrical equipment is concerned, and each of them had the same opportunity to know of the condition of the appliances. It was not a latent or hidden defect that caused Mrs. Roland's unfortunate injury; but rather the unsafe condition of the appliances, which was just as obvious to the lessee as to the landlord. Electricity is a dangerous instrumentality, and a very high degree of care is required of those who handle it and make its use available to consumers. Its use is so widespread that it may well be said that it is commonly known that dangers are attached to its use. We are not considering a situation where one came in contact with a live electric wire placed in a concealed or obscure position. As indicated, the appliances herein involved were open and in plain view of anyone who entered the bathroom; and it was a rather unusual happening that caused Mrs. Roland's shock, namely, the flipping of a wet towel on some part of the electrical appliances. We fail to find any evidence to support the contention that there was any latent or hidden defect in the premises known to Dr. Griffith and concealed by him from Mrs. Clark. This disposes of the grounds urged for reversal, aside from those having to do with the introduction of certain evidence.

The appellant sought to prove by a tenant who occupied Dr. Griffith's apartment in 1929 that one of the City's meter men told her that it was highly dangerous for the meter, wires and electrical appliances to be in the bathroom, and that she immediately told Dr. Griffith what the meter man had told her. This evidence was not admitted. The purpose of the evidence was, of course, to charge Dr. Griffith with negligence. This of itself would not have been a communication to Dr. Griffith of the existence of any latent or hidden defects, because, as we have said, the appliances were in the plain view of anyone who entered the bathroom and it is not contended that the meter man told the tenant that there was any

hidden or latent defect in them. It follows that it was not error to exclude this evidence.

The fourth complaint is directed toward the refusal of the trial court to permit the introduction of evidence to the effect that the meter and other appliances were removed from the bathroom after Mrs. Roland's accident. It is unnecessary to discuss this question, in view of the conclusion heretofore expressed that there was no evidence to support the contention that Dr. Griffith knew of any latent or hidden defect in the electrical appliances.

Judgment affirmed.