George CARVER, Administrator of the Estate of Leroy Allen, deceased, Appellant,

v.

Wilhelmina HOWARD, W. D. Fiser, d/b/a W. D. Fiser Plumbing and Heating Company, Appellees.

George CARVER, Administrator of the Estate of Nellie Carver Allen, deceased, Appellant,

v.

Wilhelmina HOWARD, W. D. Fiser, d/b/a W. D. Fiser Plumbing and Heating Company, Appellees.

Mary ELLIS, Suing as next friend for and in behalf of her infant daughter, Teresa Ellis, an infant under fourteen years of age, Appellant,

v.

Wilhelmina HOWARD, W. D. Fiser, d/b/a W. D. Fiser Plumbing and Heating Company, Appellees.

Court of Appeals of Kentucky.

June 24, 1955.

August Winkenhofer, Jr., Myers & Logan, Bowling Green, for appellant.

Bell & Orr, G. D. Milliken, Jr., Bowling Green, for appellee.

HOGG, Judge.

In this action appellants, in consolidated cases, sought to recover damages from appellees, alleging that their intestates' deaths and injuries to an infant, Teresa Ellis, were proximately caused by the joint and independent negligence of appellees, Wilhelmina Howard and W. D. Fiser, doing business as W. D. Fiser Plumbing and Heating Company. This is an appeal from a judgment entered upon a verdict directed for appellees at the close of appellants' evidence. Another defendant in the trial below, Western Kentucky Gas Company, which also received a directed verdict, is not made a party to this appeal.

The facts, insofar as they are pertinent to this appeal, disclose that on the night of August 31, 1952 a fire broke out in the cabin occupied by Leroy and Nellie Allen. As the result of the injuries received in the fire, Nellie Allen died on September 5, 1952 and Leroy Allen died on September 18, 1952. Injured seriously in the conflagration was Teresa Ellis, an infant, who was in the custody and home of the Allens on the night of the fire.

The Allens, who had moved into the cabin a few days before the fire, were to be the employees of Mrs. Howard, whose residence was on the front of the lot on which the cabin stood. In consideration of their services, Mrs. Howard had agreed to furnish the Allens the cabin. Shortly after the Allens moved into the cabin, W. D. Fiser, appellee, operator of a plumbing company, dispatched one of his employees on Mrs. Howard's request, to her property for the purpose of lighting a floor furnace and an automatic gas water heater in a garage apartment located on the lot. While there, Fiser's employee, at the request of Mrs. Howard, went to the cabin for the purpose of showing and instructing the Allens, who were unfamiliar with such devices, how to light and operate a side-arm gas water heater and a gas space heater located in the cabin. This the employee did in the presence of the Allens. Three days later the fire occurred.

An offer of testimony, by way of avowal, was made to the court as to what appellant Carver would have testified, had he been permitted to do so, concerning a conversation he had with the decedents in the hospital at about 9 a. m. on the morning of and immediately after the fire. He offered to testify that decedent Nellie Allen told him at that time that she could not live and believed she was going to die; that immediately before the fire she and her husband, with the infant appellant, had been in the bedroom and she did not know what happened except that her husband got up to prepare something to eat, struck a match, and the fire burst out. This evidence was not competent. Dying declarations are not admissible in civil cases except where the declarations are a part of the res gestae or against interest. Prudential Ins. Co. of America v. Keeling's Adm'x, 271 Ky. 558, 112 S.W.2d 994, and cases therein cited. See also, Wigmore on Evidence, section 1432.

The fire chief of the City of Bowling Green discovered soon after the fire that the gas line which extended under the cabin floor had an uncapped T in it, which allowed gas to escape freely. This fact was discovered after he chopped through the floor. The cabin rested on the floor with only a four to eight inch clearance from the floor of the cabin to the ground. He testified that the heaviest seat of damage was in the area of the uncapped T, but he declined to name the gas leak as the cause of the fire.

The gas line serving the Howard dwelling, houses and apartments on the lot extended from the street to the meter at the Howard residence; from there to the garage apartment; from there to a small cottage, and then finally to the cabin where the Allens lived. It is admitted that Mrs. Howard, from her meter and through her gas line, furnished gas for heating purposes for the houses and apartments of her tenants.

The underlying legal question in this case as to Mrs. Howard, is one of a landlord's liability to tenants and a guest for injuries and resulting deaths, and injury to the guest, attributable to the alleged defective and dangerous gas line located within the leased premises, but through which the landlord furnished gas for the use of the tenants.

In determining the liability of a landlord to a tenant and his guests, invitees and others for injuries attributable to defects in the premises, there is in the law a clear distinction existing between a state of facts where the tenant is put in complete and unrestricted possession and control of the premises with no statutory or contractual obligation on the landlord to repair, and a case where the defective condition is located in that portion of the demised premises, or appurtenances, retained by the lessor for the common use and benefit of a number of tenants.

In the first situation, the landlord is liable only for the failure to disclose known latent defects at the time the tenant leases the premises. Franklin v. Tracy, 117 Ky. 267, 77 S.W. 1113, 78 S.W. 1112, 63 L.R.A. 649; Lindsey v. Kentucky Development Co., 291 Ky. 253, 163 S.W.2d 499; Speckman v. Schuster, 183 Ky. 326, 209 S.W. 372. In the last situation the landlord must exercise ordinary care to keep in a reasonably safe condition the premises reserved for the common use of his tenants. Richmond v. Standard Elkhorn Coal Co., 222 Ky. 150, 300 S.W. 359, 58 A.L.R. 1423; Home Realty Co. v. Carius, 189 Ky. 228, 224 S.W. 751; Offutt v. O'Leary, 204 Ky. 726, 265 S.W. 296; Cohen v. White, 206 Ky. 209, 266 S.W. 1078.

The appellants assert the instant case falls under the second rule above set out and cite in support of this: Restatement of Torts, Vol. 2, section 361; Ideal Furniture Co. v. Mazer, 234 Ky. 665, 28 S.W.2d 974; Mullins v. Nordlow, 170 Ky. 169, 185 S.W. 825; Consolidation Coal Co. v. Zarirs, 222 Ky. 238, 300 S.W. 615, 58 A.L.R. 1430;

Roland v. Griffith, 291 Ky. 248, 163 S.W.2d 496; M. Michael & Bro. v. Billings Printing Co., 150 Ky. 253, 150 S.W. 77. The appellees argue that this case comes under the doctrine announced under the first rule. The question then is, under which of the above two mentioned rules does the case fall, if either?

In the Leroy and Nellie Allen cases, their petitions allege, in substance, that the defendant, Mrs. Howard, negligently furnished the decedents with unsafe living quarters, while in the Teresa Ellis case the complaint asserts that Mrs. Howard "negligently failed in her duty to discover the dangerous condition." Thus it is seen that the cases are bottomed on negligence, which is alleged in general terms. While it is true the petitions of appellants could have been more specific, we think, under the proof adduced, that each was sufficient to state a cause of action and the trial court properly overruled the appellees' motions to dismiss.

As if to show that Mrs. Howard, before the fire, had knowledge of the open gas T under the floor, appellants introduced testimony that Mrs. Howard was awakened during the fire and called the fire and police departments and that during the fire she exclaimed, "Oh, Lord, they forgot the plug!" and "I sent the plug over there. I hope they fixed it." Mrs. Howard argues that such testimony should not be accepted as proof of knowledge of a defect in the gas pipe because of the physical facts which show that the T was hidden from view and she could not have known of its defective condition. However, as we view it, such testimony was competent and tended to show she had previous knowledge of the defective condition, if the jury believed such testimony.

Whether Mrs. Howard had knowledge of the defect in the gas line is not a question for us to decide. If the case falls under the first rule enunciated above, as we believe it does, such is a question for the jury to decide under proper instructions.

An analysis of the cases cited in support of the appellants' contention that the case falls under the second rule above set out discloses that where recovery is allowed under that rule, the defective portion of the premises is most usually a stairway, hallway, pathway or other necessary adjunct or facility maintained by the landlord for the mutual use and benefit of his tenants. In attempting to apply the rules in the cases relied upon by appellants and those cited as authority for the above two rules, we immediately encounter difficulty, because, with few exceptions, none of the cases concerned defects in appliances furnished by the landlord. Rather, they concerned the simple question of whether the landlord surrendered exclusive use of the premises to the tenants, or whether, in allowing the tenants to jointly use a common entrance, hallway or the like, the landlord retained control over the premises jointly used by the tenants. See also 13 A.L.R. 837; 26 A.L.R. 1253; and 52 A.L.R. 864.

In a supplementary brief much reliance is placed on the case of Marentette v. Luechtefeld, Mo.App., 268 S.W.2d 44, by the appellants. There, recovery was allowed a tenant for injuries caused by a leaking gas pipe which extended into the kitchen of the tenant's apartment. The gas pipe was a part of a series extending from a central refrigeration unit maintained by the landlord for the mutual use of several tenants in the apartment building. Although we are not inclined to extend our rule to such an extent, nor are we faced with the same facts in the instant case, it is noteworthy that the landlord in the cited case had notice of the defect and sufficient time prior to the accident to have corrected it.

■ While it is true the appellee, Mrs. Howard, furnished gas in the same line to the appellants' premises, as well as to the premises of other tenants, it does not necessarily follow that the landlord should be answerable for all defects growing out of such service. To hold otherwise would make the landlord the virtual insurer of leased premises. We conclude, therefore, that the case does not fall under the second rule.

■ However, an altogether different picture is presented when we apply the first rule to the facts of the case at bar. The defect in the gas line was latent but there are in the record statements purportedly made by Mrs. Howard tending to show that she possessed knowledge of the defect. If in fact she possessed such knowledge, she had the duty of disclosing that fact to the appellants at the time they moved onto the premises. Therefore, the lower court will, on a return of the case, instruct the jury, substantially, that if the jury believe the alleged defective gas line was the cause of the fire, it was the duty of Mrs. Howard to disclose latent defects within her knowledge and if the gas line was defective and she had knowledge of such defect at the time the tenants moved onto the premises, they should find for the tenants.

■ The final question to decide is whether the trial court correctly directed the jury to find a verdict for the appellee (defendant) Fiser Plumbing and Heating Company. The petitions, insofar as they relate to appellee Fiser, allege that he was employed by Mrs. Howard to perform certain labor and services on the gas mains and lines about the lot, and that the services were performed negligently. The proof shows, as heretofore stated, that Mrs. Howard requested Fiser to send an employee to service the garage apartment's gas appliances and that while there Mrs. Howard asked the employee to go to the cabin and show the Allens how to light a gas side-arm heater and a gas space heater located in the cabin. It is true that the proof shows that Fiser failed to check the gas line for leakage, but Fiser was not employed to "check" the gas lines but merely to turn on some appliances and to show the Allens how to do it. There is no evidence of probative value connecting Fiser's work with the open T, the alleged cause of the fire, or that his work was done negligently. It necessarily follows that the trial court

properly directed a verdict for the plumbing company.

The judgment as to appellee, Mrs. Howard, is reversed for proceedings consistent with this opinion; the judgment as to appellee, Fiser, the plumbing company, is affirmed.