[1] This action was brought by the appellants to recover damages, actual and punitive, for alleged breach of a covenant of quiet enjoyment of certain premises under a written lease. The defendant (respondent) denied the breach and filed a counter-claim for rent unpaid. There was a verdict for the appellants, the plaintiffs, on their petition for $5000 and for the defendant on its counterclaim for $166. Judgment was entered accordingly. Punitive damages asked for by the plaintiffs were denied by the court. Defendant moved to set aside the verdict against it and to enter judgment in its favor in accordance with its motion at the close of the evidence in the case for a directed verdict. This motion was sustained on the ground that the court erred in refusing to sustain defendant's motion for a directed verdict. The judgment for the plaintiffs aforesaid was, accordingly, set aside and a judgment entered for the defendant on plaintiffs' petition. The defendant had also filed a motion for new trial, which was by the court overruled "because of the foregoing order made herein". Thereupon the plaintiffs filed a motion to set aside the order sustaining defendant's motion for a directed verdict and setting aside the said judgment for plaintiffs and entering a judgment for the defendant. This motion was denied and plaintiffs have appealed from such order and judgment complained of and from the order of the court overruling plaintiffs' last mentioned motion.
[2] The defendant was the owner of the premises known as 1016-18 West 26th Street in Kansas City, Missouri. As a part of the premises and on the space in the rear of the building thereon, there was a spur or switch track belonging to the defendant and connected with the tracks of the Frisco Railroad in the alley nearby, designed for switching freight cars to and upon said property and spotting cars thereon for loading and unloading. The plaintiffs, partners, doing business as the Kansas City Cleaning Fluids Company, were in the business of processing and wholesale sale of chemicals, and required large quantities of solvents and cleaning fluids to be delivered at the plant. For the express purpose of such business plaintiffs, on May 23, 1944, leased the above premises from the defendant for one year, beginning June 1, 1944, and expiring May 31, 1945, at $60 a month. It is admitted that the plaintiffs did not vacate the premises when the lease expired, but did so upon notice from the defendant, on or about July 23, 1945, and that the rent for such period beyond the lease term was $166, and had not been paid. The judgment on the counterclaim is not here involved.
[3] The gist of the plaintiffs' petition is that the use of the spur track was essential to the enjoyment of the lease by the plaintiffs, in order that carload lots of solvent could be purchased and received, thereby making substantial savings in the cost of manufacture as against the cost of smaller deliveries of such material by truck at greater cost; that defendant knew this when the lease was made; that plaintiffs spent large sums in building tanks, pipe connections and dock equipment to receive deliveries from railroad cars on the switch, all approved by the Frisco Railroad; that defendant thereafter refused to permit plaintiffs and the railroad to use the spur tracks; that plaintiffs have thereby been denied the proper and full enjoyment of the premises as leased, to their damage of $10,000, in the particulars itemized in the petition. The allegations of the breach were denied by defendant's answer.
[4] The plaintiffs' evidence tended to show that in negotiating the lease plaintiffs had strongly urged the defendant, through its agent, to make repairs to the building and to the spur tracks; that the property was very much out of repair, but that defendant refused to agree to make any repairs whatsoever; that the plaintiffs then looked elsewhere for suitable property, but finding none, resumed negotiations and executed the lease in question. After the lease was executed, plaintiffs made substantial repairs and built tanks, pipe connections and loading facilities, approved by the railroad, and the railroad placed the plaintiffs on "the switching tariff 1069", and repaired, at its expense, over 100 feet of the spur tracks; that plaintiffs then ordered a car of solvent from a local company, but the car *Page 511 
was stopped at the latter's plant in Kansas City because, as plaintiffs were told by the Frisco traffic agent, the defendant would not sign a "release" of the spur track. There was further evidence that the order for the car of solvent had to be canceled; that plaintiffs had obtained a steady source of supply from the company from which the car had been ordered; that the railroad traffic agent brought to plaintiffs the "release" required by the railroad, and plaintiffs, about three or four months after the lease was signed, called upon defendant's agent with the "release" for execution by the defendant, to be thereafter signed by both the plaintiffs and the railroad; that the plaintiffs informed the defendant's agent that the railroad had refused to spot a car on the spur and asked why the defendant would not sign the "release" agreement, and defendant's agent told them "You cannot use it. * * * we have nothing to do with it"; to take the matter up with the Frisco; that plaintiffs told the defendant's agent that the switching facilities were the only reason the plaintiffs leased the property, but the agent of the defendant would agree to nothing further about the switch. Thereafter the plaintiffs were compelled to purchase and to receive shipments of material in truck tank loads at a much higher cost. There was evidence of loss of profits by purchase of material in small lots, and of the outlay for equipment for receiving shipments by railroad. Correspondence was introduced between various departments of the railroad and with the plaintiffs regarding efforts to obtain the "release" agreement and finally a Frisco agent wrote defendant on December 8, 1944, inquiring about the disposition of the agreement, to which defendant replied to the effect that its attorney had advised the defendant not to sign it in its present form. Thereupon the Frisco agent wrote the defendant, asking that defendant's attorney state his objections, for possible amendment and stating "It would be necessary to secure a contract before we can serve any industry occupying this property". At the request of the railroad the defendant returned to it all copies of the agreement, unsigned, on January 22, 1945, stating that its attorney considered the same "entirely too broad and places too much liability on the owner. The tenant has a short term lease which will expire in June, 1945". Subsequent efforts of the Frisco and plaintiffs to get the agreement signed by the defendant were unavailing.
[5] The lease executed by plaintiffs and defendant was an extremely lengthy instrument, in printed form, and devoted mostly to the obligations of the tenant and to the protection of the landlord and the property. Among other provisions it states: "Tenant has seen, examined and knows the condition of the premises and accepts same in the present condition, without relying on any representations of Landlord or agent * * * and that the premises are structurally suitable for the business of Tenant". It provided that the premises were to be used for the business of processing and wholesale sale of chemicals; that the tenant would maintain the premises in first class condition and pay for all repairs within or appurtenant thereto. It states that "so long as the Tenant fully complies with all of the terms, covenants and conditions herein contained on Tenant's part to be kept and performed, Tenant shall and may peaceably and quietly have, hold and enjoy the demised premises for the term aforesaid * * *". No special mention was made in the lease of the spur or switch track on the premises. The lease was later modified only to permit the tenant to retain title to and remove plumbing and fixtures installed by tenant in the washroom. Both plaintiffs looked over the lease before signing it, expressed satisfaction with it and submitted it to their attorney, who approved it.
[6] Plaintiffs testified on cross-examination that they had inspected the property before the lease was signed and saw the condition of it; admitted that no one acting for defendant had ever told plaintiffs they could not use the spur; that no one ever placed any obstacles or obstructions on the switch track to prevent "spotting" a car thereon; that the only thing they were complaining about was the failure of defendant to sign the "release" agreement submitted by the railroad. Frisco agents produced by plaintiffs testified that the "release" agreement *Page 512 
had nothing to do with the spotting of cars on the spur in question; that an effort is made to obtain such agreements, but cars are spotted without them; that placing the plaintiffs on the switching tariff meant that services of the Frisco were then available; that cars assigned to plaintiffs would be placed on the spur if the track was in repair; that such repairs had been made by the railroad on the spur in question; that the road did not expect plaintiffs to be without spotting service simply because the "release" from the landlord was being negotiated; that cars are being spotted by the Frisco on many properties on privately owned switch tracks without such agreement, and are being spotted on this same property now occupied by successors to the plaintiffs and without a "release" from the new owner of the property; that in twenty years' experience of the Frisco Traffic Representative he had never known the railroad to refuse to spot a car because such an agreement had not been obtained from the owner and tenant, when the track had been approved by the Engineering Department, as in this case.
[7] In the course of plaintiffs' case the defendant identified and offered in evidence the proposed "release" agreement which the plaintiffs had requested it to sign. It is a nine page typewritten instrument designed for execution by the owner, tenant and railroad, purporting to provide for service by the railroad on the spur track on the landlord's property in question. In substance, it requires the owner to procure all ordinances deemed necessary by counsel for the Frisco to permit the use of the switch; that ownership to part of the tracks would vest in the railroad; that both the owner and tenant will maintain the remainder thereof and if they fail to do so, the railroad may do so at the owner's expense; that the railroad may use the spur to connect with and serve other properties; the railroad may terminate the agreement on 30 days' notice if the business there does not justify its continuance; it provides that the owner will indemnify the railroad against loss by fire on the premises and against damage to the tenant regardless of negligence of the railroad arising from fire in the locomotives while on said spur; also against damage to railroad or owner by the act of the tenant; also against damage to person or property of others by reason of proximity of structures to the track, erected by landlord or tenant, and requires the owner to share equally with the railroad any responsibility for joint negligence other than by fire, and against personal injuries or death contributed to by owner or tenant occuring in the moving of cars on the spur; and requires the owner to grant to the railroad a permanent right-of-way or easement over the spur so long as the Frisco should elect to retain the same.
[8] The Superintendent of Terminal, the Switch Foreman and the Division Engineer of the Frisco testified for the defendant. Their testimony was to the effect that the railroad had made necessary repairs to the spur tracks and approved the plaintiffs' structures; that one car was spotted on the spur for the plaintiffs so that they could make measurements for the tanks and dock structures. (This was admitted by the plaintiffs.) Agents of the Frisco also testified that another car was spotted there, consigned to the plaintiffs; that service is rendered by the Frisco on spur tracks without any "release" agreement with the owner, which sometimes takes a year or several years to obtain, if at all, and was furnished on this same property, without such "release" to predecessors of the plaintiffs as tenants there, and in many cases the tracks on premises so serviced were privately owned; that no one with full authority from the railroad had refused to spot a car for the plaintiffs after the spur was repaired. Other witnesses testified that no one representing the defendant had ever refused to permit the plaintiffs or the railroad to use the spur on the premises or interfered with such use; that the defendant did know that plaintiffs desired to use the spur and knew the nature of their business, and did refuse to make any repairs to the structures or the tracks on the site according to the lease; that the property had been vacant about three or four years; that defendant preferred to sell the property *Page 513 
and get rid of it on account of the high cost of materials at that time, and in fact did sell it about the time the lease expired.
[9] Appellants' first point is that the court erred in considering and sustaining the defendant's motion to set aside the verdict and to enter judgment in accordance with defendant's motion for a directed verdict for the reason that the motion was entitled a "Motion for Judgment, Notwithstanding the Verdict". The appellants contend that under Code, Section 120, Mo.R.S. A. § 847.120, such a motion has been abolished and therefore the court had no jurisdiction to consider or to sustain the motion, as filed. They contend that the proper motion was one to set aside the verdict and judgment and have judgment entered in accordance with the directed verdict, or motion for new trial, or joined therein, or in the alternative. Code, Section 113, Mo.R.S.A. § 847.113. Regardless of the title of the motion, as filed, its wording plainly constituted a motion to have the verdict and judgment entered thereon set aside and to have judgment entered in accordance with the defendant's motion for a directed verdict. The relief prayed was proper in such a motion. It clearly complies with Code, Sections 113 and 120, except only as to title, and we overrule the appellants' contention on this point.
[10] The substance of appellants' second point is that considering the evidence and the reasonable inferences therefrom in the light most favorable to the appellants, a submissible case was made of a breach of the covenant of quiet enjoyment of the lease, and that the court erred, therefore, in sustaining defendant's motion to set aside the judgment and to enter judgment for defendant in accordance with its motion for a directed verdict. Under that point they argue that the evidence in plaintiffs' favor was not such as to leave no room for reasonable minds to differ; that there was ample evidence to justify submission to the jury of the question of breach of covenant; that the covenant included everything appurtenant to the leased premises and secures the tenant against acts, hindrances or intentional omissions of the lessor; that if the railroad were wrong in its demands and conduct, defendant's implied duty was to protect plaintiffs therefrom, and that defendant should have acted positively to permit plaintiffs to enjoy the complete use of the switch track.
[11] It must be recalled that there is no claim of fraud in this case. Nor is it a case of hidden defects for which the landlord might, under certain circumstances, be responsible. Nor is it a case of repairs voluntarily assumed by the landlord, for the negligence in the making of which he might become responsible for certain damages. Neither is it a case wherein the known use to which the property was to be put was of such a nature as to carry with it, under the law, the implied duty of the landlord to give his separate consent therefor in such form and manner as to enable the tenant to obtain from others certain essential licenses, permits, or the like. An example of the latter group is the case of Grabenhorst, et al. v. Nicodemus et al., 42 Md. 236, cited by appellants. In that case the property was leased for use as a distillery and the law required for such use, that the written consent of the landlord of the premises be filed with the United States Collector. The landlord's refusal to give such consent, as required by law, prevented the tenant from using the property for the agreed purposes. It was held that the legal duty of the landlord to give such consent was implied in the very making of the lease. There is no such element shown in the instant case. Cases cited of that nature do not here apply. There was no showing that the law required of the defendant any agreement with the railroad such as here in evidence, in order that the premises or the switch track thereon might be used in connection with the business of processing and wholesale sale of chemicals.
[12] The principles of law in this state which apply to the case at bar are succinctly stated in Shaw v. Butterworth. 327 Mo. 622, 628, 38 S.W.2d 57, 60: "In the absence of a covenant or promise, the tenant must take the premises in the condition in which he finds them, for to a mere contract of letting the rule of caveat emptor is relevant. An implied covenant on the part of the landlord that the premises are suitable for the purposes *Page 514 
for which they are rented, or that they are in any particular condition, does not arise from the mere renting of premises. Holzhauer v. Sheeny, 127 Ky. 28, 104 S.W. 1034. * * * Defendants submit (1) that, in the absence of an undertaking to repair, there was no obligation to repair; (2) that the defendants were liable only for acts of misfeasance and not for acts of nonfeasance; and (3) there was no implied warranty as to the condition of the premises. We agree that the principles and rules of law as thus enunciated are true and correct. Glenn v. Hill, 210 Mo. 291, 109 S.W. 27, 16 L.R.A., N.S., 699; Kohnle v. Paxton, 268 Mo. 463, 188 S.W. 155; Turner v. Ragan, Mo.Sup., 229 S.W. 809".
[13] Applying those principles of the law to the evidence in this case we find that the contract of letting here involved was in writing, approved and executed by the parties; that it is nowhere therein stipulated that the defendant, as the landlord, should make or assume any repairs; that, on the contrary, it was expressly stipulated that the plaintiffs, the tenants, had examined and knew the condition of the premises and accepted the same in the present condition, without relying on representations of the landlord or agent, and would "pay for all repairs within or appurtenant thereto"; that the lease contained no recitation to the effect that the landlord covenanted the property to be suitable for the designated use; that the landlord did not expressly or impliedly warrant the condition of the premises; that the lease contained no requirement, express or implied, that the landlord would enter into the proposed agreement with the Frisco Railroad in evidence, or any agreement whatsoever with such company, nor was there any showing that the landlord was required, under the law, so to do, nor was there any showing that the defendant obstructed or interfered in any way with the use of the spur track leased to the plaintiffs, or otherwise violated any of the covenants of the lease.
[14] In view of the foregoing conclusions, we further determine that the court should not have refused, at the close of all the evidence, the defendant's motion for a directed verdict, but having done so, the court acted properly, upon defendant's timely motion therefor, in setting aside the judgment and verdict for the plaintiffs aforesaid on the plaintiffs' petition and entering a judgment for the defendant as it had previously prayed for in its motion for a directed verdict. Consequently, the court properly overruled the plaintiffs' subsequent motion to set aside such action of the court.
[15] The order of the court in sustaining defendant's motion to set aside the verdict and judgment for plaintiffs and to enter judgment for defendant, the setting aside of the said verdict and judgment for plaintiffs and entering a judgment for defendant, and the order overruling plaintiffs' motion to set aside such orders and judgment are hereby affirmed.
[16] All concur.